2012 UT 86

**UTAH DOWN SYNDROME FOUNDATION, INC., Plaintiff and Appellee,**

v.

**UTAH DOWN SYNDROME ASSOCIATION, et al., Defendants and Appellants.**

**The Members of the Uptown Downs and Up with Down, Intervenor.**

**Donald D. Gilbert, Jr., Judgment Debtor and Appellant.**

No. 20110205.

Supreme Court of Utah.

Dec. 7, 2012.

E. Barney Gesas, Lynn O. Poulson, Salt Lake City, for appellant.

Russell A. Cline, Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 Attorney Donald D. Gilbert, Jr. appeals the denial of his motion to vacate the district court's Disgorgement Order, which ordered him to return $30,000 that he received as payment for legal services he had provided to the Utah Down Syndrome Association and its founders. We dismiss Mr. Gilbert's appeal for lack of appellate jurisdiction because, as a nonparty to this lawsuit, he is not entitled to an appeal as of right. Because we lack appellate jurisdiction, we are precluded from addressing this case on the merits and therefore express no opinion regarding Mr. Gilbert's personal jurisdiction claims.

## BACKGROUND

¶ 2 This appeal arises from the district court's Disgorgement Order, which required Mr. Gilbert to disgorge $30,000 in legal fees that he received as payment for his represen-

tation of the Utah Down Syndrome Association and its founders. The Disgorgement Order stems from a dispute between the founders of the Utah Down Syndrome Association (Association) and the Utah Down Syndrome Foundation (Foundation). In two separate lawsuits, Mr. Gilbert represented several former officers[1] of the Foundation and current founders of the Association who, after becoming dissatisfied with the management of the Foundation, left to form a competing nonprofit, the Association. The Disgorgement Order, which was issued in the second lawsuit, required Mr. Gilbert to forfeit legal fees he had received for representing the Association and its founders in their lawsuits with the Foundation. This appeal arises from the second lawsuit.

¶ 3 In the first lawsuit, the details of which are not relevant to this appeal,[2] the district court issued a Partial Summary Judgment Order forbidding Mr. Gilbert's clients from accessing the Foundation's funds located in certain bank accounts (Disputed Accounts). Later, as payment for his legal services, Mr. Gilbert received four checks, totaling $30,000, which were drawn from the Disputed Accounts. After the Partial Summary Judgment Order was issued in the first lawsuit, the Foundation filed a complaint initiating the second lawsuit.[3]

¶ 4 In the second lawsuit, the Foundation sued the Association and its founders, requesting an accounting and recovery of all funds taken from the Foundation's Disputed Accounts. After discovering that some of the funds were used to pay Mr. Gilbert for his legal representation of the Association and its founders, the Foundation filed two successive motions for disgorgement.[4] The motions requested that the court order Mr. Gilbert to disgorge $30,000 in legal fees he had received from the Disputed Accounts, as well as an additional $2,453 for the Foundation's attorney fees. This appeal stems from the Disgorgement Order, which was issued in the second lawsuit.

¶ 5 Mr. Gilbert was never named as a party and he was never served with process. And Mr. Gilbert did not file a motion to intervene as an interested party. However, Mr. Gilbert did receive a copy of the motions for disgorgement and the Disgorgement Order in his capacity as an attorney for his clients. He filed a brief in opposition to the motion on behalf of his clients, and he orally opposed the first Motion for Disgorgement before the district court, again in his representative capacity on behalf of his clients. The district court ultimately granted the Foundation's final Motion for Disgorgement and issued an Order and Judgment against Mr. Gilbert two months after he had withdrawn as the Association's attorney of record. The district court's Order and Judgment against Mr. Gilbert ordered him to pay $32,453 to the Foundation. To date, Mr. Gilbert has not disgorged his fees.[5]

1. These individuals include Lisa Kingsbury, Melanie Taylor, Kara Olander, Eric Holman, Pam Holman, Cathy Collard, and Jill Austin.

2. In the first lawsuit, two officers from the Foundation's Utah County and Salt Lake County Chapters, Eric Holman and Mellanie Taylor, retained Mr. Gilbert to represent them and the Foundation in a suit against the Foundation's president, Suzanne Smith. Mr. Gilbert filed a complaint in the first lawsuit, purporting to represent the Foundation on behalf of Eric Holman and Mellanie Taylor. The complaint requested declaratory relief and asked the court to determine that Suzanne Smith and the other Foundation officers did not have authority to act on behalf of the Foundation. This lawsuit was later dismissed with prejudice because the district court found that Eric Holman and Mellanie Taylor did not have the authority to file suit on behalf of the Foundation.

3. The first lawsuit has been dismissed with prejudice. Therefore, the first lawsuit is only relevant to the extent that it provides context for this appeal.

4. In its first motion, the Foundation requested that Mr. Gilbert be ordered to disgorge $22,500 that he received from the Disputed Accounts. When the Foundation later discovered that an additional payment had been made to Mr. Gilbert from the Disputed Accounts, the Foundation filed a second motion for disgorgement requesting the entire $30,000 that Mr. Gilbert received from the Disputed Accounts as well as $2,543 in attorney fees.

5. There is also a third lawsuit involving Mr. Gilbert and these parties. As a result of Mr. Gilbert's failure to disgorge his attorney fees, the Foundation's president, Suzanne Smith, brought a bar complaint against Mr. Gilbert. In response, Mr. Gilbert filed a third-party complaint

¶ 6 Two years after the issuance of the Disgorgement Order in the second lawsuit, and while the second lawsuit was still being litigated, Mr. Gilbert filed a Motion to Vacate the Disgorgement Order (Motion to Vacate) under rule 60(b)(4) of the Utah Rules of Civil Procedure. He argued that the Disgorgement Order was void for lack of personal jurisdiction because he was never a named party or personally served with the motions or the order. He also argued that, because the district court lacked personal jurisdiction over him, the Disgorgement Order violated his due process rights. The Foundation opposed Mr. Gilbert's Motion to Vacate, arguing that the court had jurisdiction based on its inherent authority over Mr. Gilbert as an attorney and officer of the court. Additionally, the Foundation argued that Mr. Gilbert had a special duty to inquire as to the source of his fees and that he violated that duty when he accepted funds that he knew were subject to the Partial Summary Judgment Order from the first lawsuit. The district court denied Mr. Gilbert's motion on the merits, reasoning that it had jurisdiction over Mr. Gilbert as an officer of the court and that he had violated a court order by accepting funds that he knew were subject to the Partial Summary Judgment Order. Mr. Gilbert now appeals the district court's dismissal of his motion to vacate the Disgorgement Order.

### STANDARD OF REVIEW

¶ 7 "Whether this court has jurisdiction over an appeal is a question of law that can be raised for the first time on appeal." *Navajo Nation v. State (In re Adoption of A.B.)*, 2010 UT 55, ¶ 21, 245 P.3d 711. And "a lack of jurisdiction can be raised at any time by either party or by the court." *Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1100 (Utah 1991) (internal quotation marks omitted). "When this court lacks jurisdiction over an appeal, it

retains only the authority to dismiss the appeal." *In re A.B.*, 2010 UT 55, ¶ 21, 245 P.3d 711.

### ANALYSIS

I. WE DISMISS THIS APPEAL FOR LACK OF APPELLATE JURISDICTION BECAUSE, AS A NONPARTY, MR. GILBERT IS NOT ENTITLED TO AN APPEAL AS OF RIGHT

¶ 8 Mr. Gilbert and the Foundation present this case as an appeal taken as of right under section 78A-3-102(3)(j) of the Utah Code, and both parties focus their arguments on the merits of the district court's denial of Mr. Gilbert's Motion to Vacate. Mr. Gilbert argues that the district court erred in denying his Motion to Vacate because he was never personally served with the motions for disgorgement and therefore, the lower court lacked personal jurisdiction over him and its order violated his due process rights. The Foundation contends that, because Mr. Gilbert received and opposed the motion on behalf of his clients, he had actual knowledge of the motion and waived his right to challenge the court's personal jurisdiction over him.

¶ 9 While both Mr. Gilbert and the Foundation focus on the merits of the district court's denial of the Motion to Vacate, we see a more fundamental jurisdictional problem with this appeal.[6] Namely, Mr. Gilbert, as a nonparty, is not entitled to appeal the district court's denial of his Motion to Vacate. We have previously held that persons or entities that are not parties to a proceeding are not entitled to an appeal as of right. *See, e.g., Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 46, 110 P.3d 678 (noting that "nonparties . . . cannot appeal the [court] order"); *State v. Sun Sur. Ins. Co.*, 2004 UT 74, ¶ 9, 99 P.3d 818 (noting that "[a] surety cannot bring a direct appeal in a criminal case because it is not a party to the

against the Foundation, impleading the Foundation into the disciplinary suit. This third suit is the subject of another appeal before this court, *In re Gilbert*, appellate case number 20110004.

6. Even though both Mr. Gilbert and the Foundation present this case as an appeal taken as of

right, "acquiescence of the parties is insufficient to confer jurisdiction on the court, and a lack of jurisdiction can be raised by the court or either party at any time." *Bradbury v. Valencia*, 2000 UT 50, ¶ 8, 5 P.3d 649 (internal quotation marks omitted).

criminal case"). Instead, "an extraordinary writ is the vehicle pursuant to which [nonparties can] properly ... challenge[ ] [a court] order." *Tremco*, 2005 UT 19, ¶ 46 n. 7, 110 P.3d 678.

■ ¶ 10 The Utah Rules of Appellate and Civil Procedure support this conclusion. While the appellate rules do not explicitly state who may file an appeal as of right, contextually, they speak exclusively in terms of "parties" who may take an appeal. *See* Utah R.App. P. 3, 4. Specifically, rule 3(d), which governs appeals as of right, requires that "[t]he notice of appeal ... specify the *party or parties* taking the appeal." (Emphasis added.)[7] In contrast, rule 65B(a) of the Utah Rules of Civil Procedure, which governs extraordinary writs, states that "[w]here no other plain, speedy and adequate remedy is available, *a person* may petition the court for extraordinary relief." (Emphasis added.) And "where an inferior court ... has exceeded its jurisdiction," a "*person* aggrieved or whose interests are threatened ... may petition the court for relief." *Id.* 65B(d)(1)-(2) (emphasis added).[8] Thus, our procedural rules confirm that nonparties are not entitled to an appeal as of right. Instead, a nonparty who seeks relief from a lower court's order that purports to affect the nonparty's interests must proceed by way of an extraordinary writ.

¶ 11 The issues presented here are similar to those presented in *Tremco*. In *Tremco*, we dismissed an appeal for lack of jurisdiction because a nonparty had improperly at-

tempted to take an appeal as of right. 2005 UT 19, ¶ 46, 110 P.3d 678. The district court had issued an order that held several nonparties liable for a judgment even though they "were neither served with process nor made parties to the case." *Id.* ¶ 43. After the order was issued, the nonparties moved to vacate the order, arguing that the court lacked personal jurisdiction over them because they were never served with the summons and complaint. *Id.* ¶ 44. They also argued that, because they were not personally served, the court's order violated their due process rights. *Id.* The district court denied the motion. *Id.* ¶ 45.

¶ 12 The nonparties appealed the denial of the motion to vacate and, on appeal, we determined that there was a "fundamental jurisdictional problem with the [nonparties'] appeal ..., namely, that they [were] not parties to [the] proceeding." *Id.* ¶ 46. We held that "[a]s nonparties, they [could not] appeal the [district court's] order." *Id.* We concluded that "[w]here an appeal is not properly taken, this court lacks jurisdiction and we must dismiss." *Id.* (internal quotation marks omitted). However, we observed that the nonparties in *Tremco* were not without a remedy. "Because they were not parties to the proceedings below, an extraordinary writ [was] the vehicle pursuant to which the [nonparties] could properly have challenged the ... order." *Id.* ¶ 46 n. 7.

■ ¶ 13 Similarly, in this case, the district court issued an order and judgment purporting to affect the interests of a non-

---

7. *See also* Utah R.App. P. 3(c) (noting that "[t]he *party* taking the appeal shall be known as the appellant and the adverse *party* as the appellee" and "[i]n original proceedings in the appellate court, the *party* making the original application shall be known as the petitioner and any other *party* as the respondent") (emphases added); *id.* 3(e) (noting that "[t]he *party* taking the appeal shall give notice of the filing of a notice of appeal by serving ... a copy thereof to counsel of record of each *party*") (emphases added); *id.* 3(f) (noting that "[a]t the time of filing any notice of separate, joint, or cross appeal in a civil case, the *party* taking the appeal shall pay to the clerk of the trial court the filing fee") (emphasis added); *id.* 4(b)(1) (noting that "[i]f a *party* timely files in the trial court any of the following motions, the time for *all parties* to appeal from the judgment runs from the entry of the order disposing of the motion") (emphases added); *id.* 4(d) (noting that

"[i]f a timely notice of appeal is filed by a *party*, any other *party* may file a notice of appeal within 14 days after the date on which the first notice of appeal is docketed") (emphases added); *id.* 4(e) (noting that "[n]otice of a motion filed after expiration of the prescribed time shall be given to the other *parties* in accordance with the rules of practice of the trial court") (emphasis added).

8. Rule 19 of the Utah Rules of Appellate Procedure also governs extraordinary writs and uses the phrase "*all persons* or associations whose interests might be substantially affected by the writ" as well as the term "all parties." Utah R.App. P. 19(a), (b)(1), (c), (g) (emphasis added). This is in contrast to rules 3 and 4, which exclusively use the terms "party" and "parties." *Id.* 3, 4.

party. The district court entered a $32,543 judgment against Mr. Gilbert even though he was never named a party to the proceedings or served with process. And Mr. Gilbert never filed a motion to intervene as a party. Instead, Mr. Gilbert filed a rule 60(b) Motion to Vacate the Disgorgement Order, and then appealed the denial of that motion to this court as an appeal of right under section 78A–3–102(3)(j) of the Utah Code. Because he was never a party, however, Mr. Gilbert does not have an appeal as of right, and his attempt to appeal was improper. "Where an appeal is not properly taken, this court lacks jurisdiction and we must dismiss." *Id.* ¶ 46 (internal quotation marks omitted).

## II. THE APPROACH SUGGESTED BY THE CONCURRENCE IS INCONSISTENT WITH OUR JURISPRUDENCE AND WOULD CREATE AN UNWORKABLE PROCEDURAL FRAMEWORK

¶ 14 The concurring opinion relies on the "incontrovertible" principle that " '[d]ue process dictates and principles of fairness counsel that [a nonparty] be given an opportunity to challenge the district court's assertion of jurisdiction over it, particularly when the court specifically entered an injunction against [it].' " *Infra* ¶ 44 (alteration omitted) (emphasis omitted) (quoting *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 955 (4th Cir. 1999)). On this point, we are in complete agreement. We diverge, however, with respect to the procedural path for such a challenge. We conclude that the appropriate path is the one dictated by our appellate rules and prior precedent.

¶ 15 Our rules require nonparties, whose interests are purportedly affected by a court order, to file a motion to intervene as a party in the trial court or to file a petition for extraordinary writ with the appellate court. While the concurring opinion argues that "[a] person subject to a coercive court order cannot properly be denied the right to appeal on the ground that he lacked formal party status in the trial court," *infra* ¶ 34, that argu-

ment is not relevant here inasmuch as Mr. Gilbert never sought formal party status in the trial court. Had he successfully done so, he would have been a party. And had he been unsuccessful, he would have had the immediate right to appeal from the district court order denying intervention. Because he failed to seek intervention, his remaining option was to petition this court for extraordinary relief.

¶ 16 In the area of appellate jurisdiction, certainty is critical. To the extent that a jurisdictional inquiry can be governed by bright-line rules, it benefits both appellate courts and litigants. Specifically, it avoids the possibility that an appeal may be dismissed on jurisdictional grounds, thereby depriving an aggrieved person of the right to appellate review in cases where deadlines for pursuing the correct jurisdictional course have expired. But the approach proposed by the concurring opinion does not achieve certainty for a number of reasons.

¶ 17 The concurrence would transfer from the trial courts to the appellate courts the determination of whether a person or entity has a sufficient interest to qualify for standing. Under the majority approach, such issues are routinely decided by the trial courts in the context of motions to intervene. Under the approach espoused by the concurring opinion, however, the appellate courts would be required to decide such issues in the context of determining whether a nonparty constitutes a "de facto party" for purposes of appellate standing and jurisdiction.[9] Not only would this create an uncertain procedural course for those seeking review, it would force appellate courts to tackle factual disputes they are uniquely unqualified to resolve. In short, it would shift from the district courts to the appellate courts the burden of deciding at least some contested interventions. And because there appears to be no principled basis for limiting the concurring opinion's "de facto party" approach to appeals, it may also raise questions about whether parties could functionally achieve intervenor status in district

9. Should the status of "de facto party" be contested on appeal, it would likely be difficult to resolve the contest based on the allegations or the docketing statement. But appellate courts are simply not equipped to take evidence or resolve such factual disputes.

court proceedings without seeking formal leave to intervene.

¶ 18 Such an approach is particularly problematic for those unnamed parties who find themselves subject to a court order but are uncertain whether they will be treated as a "de facto party." Under our rules, it is the service of process, the affirmative act of filing suit, or the act of seeking to intervene as a party that subjects one to the jurisdiction of the court and puts him on notice that he is subject to ongoing court proceedings. But the concurrence would base the right to appeal upon none of these things. And there is simply no certain mechanism for determining when one has crossed the threshold to qualify for "de facto party" status. This would necessarily give way to confusion and uncertainty.

■ ¶ 19 The concurrence opines that "[a]n appeal of right is the gold standard" due to the discretionary nature of an extraordinary writ. *Infra* ¶ 56. While it is correct that an extraordinary writ is discretionary, the discretionary nature of our writ power decreases where a person's fundamental due process rights are at issue. *See Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Lindberg*, 2010 UT 51, ¶ 24, 238 P.3d 1054 (listing factors that inform the court's discretion to grant extraordinary relief, including the "egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error," and any other factors regarded as important to the case's outcome) (internal quotation marks omitted); *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 20, 156 P.3d 782 (noting that the "due process deprivations ... infected the district court's ruling on intervention"). We therefore see no problem in trusting the appellate courts to recognize when a substantial right to due process is at stake and to act accordingly.

¶ 20 Moreover, the practical benefits of the approach espoused by the concurring opinion may prove elusive in any event. The claimed benefit of the approach suggested by the concurrence is that a person aggrieved by a court order would have the absolute right to appeal. But such a right may be obtained simply by filing a motion to intervene in the district court. And even under the approach suggested by the concurrence, a right to appellate review would arise only if the order affecting the "de facto party" happened to constitute a final judgment with respect to all parties and issues in the lawsuit. If, as in this case, the order is merely interlocutory, then there is only the possibility of a discretionary remedy regardless of party status. In such circumstances, the only distinction created by the recognition of "de facto party" status is the choice between a petition for interlocutory appeal and a petition for extraordinary writ.[10] Since both are, at some level, discretionary, this undercuts the concurring opinion's thesis that a person subject to a court order ought to have a right to appeal—not merely an opportunity to seek discretionary appellate review.

¶ 21 In the case of a nonfinal order, the approach suggested by the concurrence would create even more uncertainty. Would we allow a nonparty to move for rule 54 certification in the district court, which would appear to be the only path to immediate appellate review? If not, such a nonparty would have to monitor the lawsuit—in which he was never a party in the first place—and wait until the suit reaches resolution to the point of an appealable final order.

¶ 22 The majority approach avoids these uncertainties by following established rules regarding intervention and petitions for extraordinary writ. In cases where there is time to seek intervention, the claim for party status can be submitted to the district court in the first instance, rather than to the appellate court.[11] In those cases where such a

10. Two types of orders likely to affect nonparties include orders relating to disputes over access to evidence or the freezing of assets to preserve the status quo pending adjudication. Since both types are almost always interlocutory, an entitlement to an appeal as of right would not likely

arise in such circumstances until well after they had become moot.

11. The concurrence states that intervention is untenable for someone like Mr. Gilbert because "[i]f he were required to intervene, he would

motion cannot provide timely relief, a petition for extraordinary writ filed with the appellate court provides an adequate remedy in light of the appellate court's obligation to give due regard to principles of due process. And while a petition for extraordinary writ requires that the appellate court make a determination as to whether substantial rights are affected, it is unclear how that inquiry is materially different from the determination that would be necessary to verify "de facto party" status under the approach espoused by the concurrence. Thus, the approach adopted by the majority will have the pragmatic benefits of avoiding potential uncertainty over the choice of the proper procedural avenue for appellate review and keeping fact-intensive adjudications of contested interventions in the district courts.

¶ 23 The approach suggested by the concurrence suffers from other flaws as well. It conflates the concept of *standing* to appeal with the concept of *appellate jurisdiction.* We agree that Mr. Gilbert has standing. But this is not responsive to the majority position, which is premised on the narrow ground that we lack appellate jurisdiction because Mr. Gilbert, as a nonparty, cannot appeal as a matter of right. Lack of appellate jurisdiction is distinct from standing. Indeed, the U.S. Supreme Court has taken care to distinguish these concepts, noting that *"jurisdiction* is a question of whether a . . . court has the power, under the [applicable laws], to hear a case; [whereas] *standing* is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art[icle] III case or controversy." *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (emphasis in original). It is because we lack *appellate jurisdiction,* and thus the power to hear this particular appeal, that we must dismiss Mr. Gilbert's case. *Supra* ¶ 9.

■ ¶ 24 The concurrence's reliance on caselaw to support its position is misplaced.

It contends that this court has "recognized a 'de facto [party]' principle that treats a nonparty's consistent participation in the district court as the functional equivalent of formal intervention." *Infra* ¶ 39 (citing *Ostler v. Buhler,* 1999 UT 99, ¶ 7, 989 P.2d 1073). But *Ostler* does not support the assertion that nonparties may take appeals as of right under our appellate rules. In *Ostler,* the appeal was not taken by the nonparty; rather, the individual who filed the notice of appeal was an already-named party to the litigation. *See Ostler,* 1999 UT 99, ¶ 1, 989 P.2d 1073 (noting that the already-named party "[p]laintiff Neal Ostler appeal[ed] from an order allowing intervention in the trial court by Ostler's former attorney, [the nonparty,] and awarding fees to that [nonparty] out of settlement proceeds received by Ostler"). Thus, *Ostler* did not present any issues regarding our appellate jurisdiction. In contrast, Mr. Gilbert attempted to appeal as of right as a nonparty. But the law is clear that "acquiescence of the parties is insufficient to confer jurisdiction on the court, and a lack of jurisdiction can be raised by the court or either party at any time." *Bradbury v. Valencia,* 2000 UT 50, ¶ 8, 5 P.3d 649 (internal quotation marks omitted).

¶ 25 The concurrence also cites to a line of attorney discipline cases which, it claims, "effectively applies this [de facto party] standard without expressly discussing it." *Infra* ¶ 40. This attempt to bootstrap the "de facto party" standard to attorney discipline cases is unpersuasive. As the concurrence concedes, these cases do not rely on a "de facto party" principle. *Id.* Moreover, these cases are distinguishable because of their unique nature as attorney discipline actions. In each of these cases, the court specifically issued sanctions and contempt orders against attorneys in their representative capacities. *See, e.g., Fugal v. Howard,* 2007 UT 88, ¶ 1, 171 P.3d 451 (per curiam) (holding that an attorney appealing a contempt sanction had a

effectively be forced to abandon his position on the merits." *Infra* ¶ 53. This is incorrect. Someone who files a motion to intervene can still raise personal jurisdiction as a defense, so long as he does it in his first pleading. If he fails to do so, then he waives personal jurisdiction, just as in any other case. *See* Utah R. Civ. P. 12(d).

In the case relied on by the concurrence, jurisdictional challenges were waived because the party intervened in the proceeding without raising lack of personal jurisdiction as a defense. *Infra* ¶ 52 n. 9. *See C.F. v. D.D. (In re B.B.D.),* 1999 UT 70, ¶¶ 6–7, 29, 984 P.2d 967.

right to appeal in the case in chief); *Feather-stone v. Schaerrer*, 2001 UT 86, ¶ 1, 34 P.3d 194 (considering an appeal of the imposition of sanctions on an attorney for violations of the Rules of Professional Conduct and discovery rules); *Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 462 (Utah 1998) (considering an attorney's appeal of rule 11 sanctions); *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070, 1071 (Utah 1988) (considering an attorney's appeal of a contempt order). In contrast, the district court in this case expressly declined to hold Mr. Gilbert in contempt and it did not issue any sanctions against Mr. Gilbert in his capacity as an attorney. Rather, the district court issued a money judgment against Mr. Gilbert in his personal capacity. And the district court issued its judgment against Mr. Gilbert two months after he was no longer the attorney of record in the case.

■ ¶ 26 The concurrence also cites to numerous cases from other jurisdictions. But this case presents a question of interpretation of Utah's Rules of Appellate Procedure, and we have exclusive authority in interpreting those rules. Thus, the concurrence's citation to federal case law interpreting the federal rules is unpersuasive in light of our own controlling authority that a nonparty cannot directly appeal a court order. *Tremco*, 2005 UT 19, ¶ 46, 110 P.3d 678.

¶ 27 The potential pitfalls in the concurrence's approach are aptly demonstrated by its application in this very case. Under the concurrence, Mr. Gilbert would not have been eligible to seek appellate review of the judgment entered against him until all claims and issues in the underlying suit had been resolved. Thus, he would have had to wait three years and closely follow a case in which he was neither a party nor the attorney of record. Mr. Gilbert would have had to ascertain which order constituted the court's final, appealable order. And even then, Mr. Gilbert would have risked the chance that review of his claims would be forever foreclosed if he chose to appeal at the wrong time. Indeed, the concurrence would dismiss Mr. Gilbert's claims because the June 13, 2008 order that Mr. Gilbert chose to appeal was not final. *Infra* ¶ 60–61. The concur-

rence reasons that Mr. Gilbert's claims became appealable only after the district court's March 4, 2011 order, which dismissed all remaining claims, many of which were entirely unrelated to the Disgorgement Order issued against Mr. Gilbert three years earlier. *Infra* ¶ 61. This approach would yield a perverse result, penalizing Mr. Gilbert for filing his appeal on February 11, 2011, two years *after* the entry of judgment on the Motion for Disgorgement, *infra* ¶ 62, while simultaneously penalizing him because his notice of appeal was filed twenty-one days *before* the district court's final order disposing of all claims. *Infra* ¶ 61. And this approach would forever foreclose review of Mr. Gilbert's personal jurisdiction and due process claims based on his inability to navigate the concurrence's confusing and unpredictable procedural framework.

■ ¶ 28 Finally, the concurrence proposes that we dismiss this case because Mr. Gilbert's 60(b) motion was not timely, reasoning that Mr. Gilbert waived any objections to the court's exercise of personal jurisdiction over him. *Infra* ¶¶ 60–67. But its proposed result is simply not supported by the law. In *Garcia v. Garcia*, we noted that where there is defective service of process, "the requirement that the motion be made within a 'reasonable time' ... cannot be enforced." 712 P.2d 288, 291 (Utah 1986) (per curiam) (quoting 11 Charles Alan Wright, et al., Wright & Miller, Federal Practice and Civil Procedure § 2862 2d ed.1976). In *Garcia*, we held that a man who had waited ten years after the entry of judgment to file a 60(b) motion to vacate was not disqualified based on timeliness concerns because "where the judgment is void because of a fatally defective service of process, the time limitations of [r]ule 60(b) have no application." *Id.* at 290.

■ ¶ 29 Our case law is clear that actual notice is insufficient to confer jurisdiction over a party where there is a lack of service of process. We have held that "[t]he proper issuance and service of summons is the means of invoking the jurisdiction of the court and of acquiring jurisdiction over the defendant; these cannot be supplanted by mere notice by letter, telephone or any other such means." *Murdock v. Blake*, 26 Utah 2d

22, 484 P.2d 164, 167 (1971). Thus, our courts have consistently held that under the Utah Rules of Civil Procedure, actual notice is insufficient to supplant proper service of process. *See, e.g., Saysavanh v. Saysavanh,* 2006 UT App 385, ¶ 25, 145 P.3d 1166.

¶ 30 In summary, under the concurrence's approach, it would be extremely difficult for a nonparty to determine when to appeal. And there would be the real possibility that a final order could be issued and the appeal time could run before the nonparty was even aware of the court's order. This would completely eliminate predictability and certainty for nonparties who find themselves subject to a court order without having been named a party or served with process. Such an approach is entirely inconsistent with the notion that "[d]ue process dictates and principles of fairness counsel that [a nonparty] be given an opportunity to challenge the district court's assertion of jurisdiction over it." *Infra* ¶ 44 (quoting *R.M.S. Titanic,* 171 F.3d at 955).

¶ 31 In contrast, Utah's rule makes practical sense as a matter of procedural policy. It promotes quick review of a nonparty's claims. It promotes fairness and certainty by giving nonparties clear instructions on how to navigate the appellate rules. This ensures that individuals who find themselves subject to court orders without first being served with process are afforded the protections of due process and may have their claims reviewed. The availability of intervention in the district courts and scrupulous appellate fidelity to constitutional principles will generate the same result sought by the concurrence without the pragmatic pitfalls of the "de facto party" approach.

## CONCLUSION

¶ 32 We dismiss Mr. Gilbert's appeal for lack of appellate jurisdiction because, as a nonparty, Mr. Gilbert was not entitled to an appeal as of right.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING and Justice DURHAM joined.

Justice LEE filed a concurring opinion.

Justice LEE, concurring in the judgment:

¶ 33 I respectfully disagree with the court's decision to dismiss this case on the basis of Gilbert's lack of standing to appeal. Under settled, sensible principles of standing on appeal, a person subjected to a coercive court order is entitled to appeal even if he is not formally joined as a party below. The court's contrary conclusion is legally unfounded. It will also yield perverse incentives and fundamental unfairness.

¶ 34 A person subject to a coercive court order cannot properly be denied the right to appeal on the ground that he lacked formal party status in the trial court. Such a denial runs counter to fundamental principles of due process. Though the majority claims that its substitute processes—motions to intervene and petitions for extraordinary writ—adequately protect those principles, *supra* ¶ 31, these processes are inferior both in style and substance and cannot replace meaningful appellate review. This is particularly true for nonparties like Gilbert, whose complaint on appeal is rooted in a challenge to the court's power to bind him in the first place. Nonparties claiming that the court lacks jurisdiction over them cannot be expected to voluntarily submit themselves to that jurisdiction—by moving to intervene—thereby laying waste to the very claim of error they wish to raise on appeal. And if the right to appeal can be cut off by the simple expedient of refusing to join a person as a formal party, we should anticipate an increase in orders against nonparties in circumstances where appellate review might be seen as an unnecessary nuisance. Our law cannot possibly condone such a regime.

¶ 35 And in fact it does not—except in one prior opinion, which in my view we ought to repudiate. In Utah and in most other jurisdictions, both state and federal, a person subject to a coercive court order is a "de facto party" with standing to appeal. I would apply that rule and uphold our jurisdiction to hear an appeal filed by a "de facto party" like Gilbert. In so doing, I would overrule the one outlier decision where we foreclosed such an appeal. Ultimately, however, I would dis-

miss the case on alternative jurisdictional grounds—that the appellant failed to file a timely notice of appeal.

## I

¶ 36 I have no quarrel with the general rule cited by the majority—that a nonparty has no standing to appeal a judgment entered in an action involving others. *Supra* ¶ 9 (citing *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19, ¶ 46, 110 P.3d 678), *overruled on other grounds by Madsen v. JPMorgan Chase Bank, N.A.*, 2012 UT 51, 296 P.3d 671, 2012 WL 3639706. But this general rule is uniformly understood to be subject to an important exception. And that exception is unquestionably applicable here. It recognizes a right of appeal for those who are not formally named as parties but that become parties when they are functionally treated as such in litigation (by being subjected to a coercive court order).[1] The case-law embracing this exception is widespread and uniform.[2]

1. *See* 15A CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE & PROCEDURE JURISDICTION § 3902.1 (2d ed.1976) (noting that "[t]he easiest cases for permitting nonparty appeal are those in which a court order directly binds the nonparty by name").

2. *See Ex parte State Pers. Bd.*, 45 So.3d 751, 754 (Ala.2010) (recognizing nonparties' standing to appeal when bound by an injunction); *Bennett v. Baxter Grp., Inc.*, 223 Ariz. 414, 224 P.3d 230, 239 (Ariz.Ct.App.2010) ("Under certain circumstances, nonparties are allowed to appeal a judgment."); *Swindle v. Benton Cnty. Cir. Court*, 363 Ark. 118, 211 S.W.3d 522, 524 (2005) (recognizing exception that allows "any appellant, though not a party" to appeal when it "has a pecuniary interest affected by the court's disposition of the matter below"); *Bush v. Winker*, 907 P.2d 79, 81 (Colo.1995) (en banc) ("A non-party has standing to appeal an order of the trial court following entry of final judgment if it appears that the nonparty was substantially aggrieved by the order."); *BEA Sys., Inc. v. WebMethods, Inc.*, 265 Ga.App. 503, 595 S.E.2d 87, 91 (2004) (holding that nonparties bound by injunctions have standing to appeal); *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 151 P.3d 732, 756–57 (2007) ("[A] non-party against whom judgment is entered has standing without having intervened in the [lower] court action to appeal the [lower] court's exercise of jurisdiction over him." (internal quotation marks omitted)); *St. Mary of Nazareth Hosp. v. Kuczaj*, 174 Ill.App.3d 268, 123 Ill.Dec. 745, 528 N.E.2d 290, 292 (1988) ("Even non-parties have standing to appeal provided they have a direct, immediate and substantial interest in the subject matter of the litigation which would be prejudiced by the judgment or benefit by its reversal."); *Md.–Nat'l Capital Park & Planning Comm'n v. McCaw*, 246 Md. 662, 229 A.2d 584, 587 (1967) ("[A]ppeals are permitted by parties of record and also persons who were directly interested in the subject matter of the suit."); *Corbett v. Related Cos. Ne., Inc.*, 424 Mass. 714, 677 N.E.2d 1153, 1155–56 (1997) (recognizing that an exception to the general rule exists when a nonparty that did not intervene "has a direct, immediate and substantial interest that has been prejudiced by the judgment, and has participated in the underlying proceedings to such an extent that the nonparty has intervened 'in fact' "); *Sartwell v. Sammons (In re Marriage of Sammons )*, 642 N.W.2d 450, 456 (Minn.Ct. App.2002) ("[T]he general rule is that a person may appeal from a judgment that adversely affects his or her rights, even if the person was not a party to the proceeding below."); *Federated Mut. Ins. Co. v. McNeal*, 943 So.2d 658, 663 (Miss.2006) (allowing nonparty appeals where "the nonpart[y] actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-part[y] ha[s] a personal stake in the outcome" (alterations in original) (internal quotation marks omitted)); *Schroff v. Smart*, 120 S.W.3d 751, 755 (Mo.Ct. App.2003) (recognizing the rule that a nonparty aggrieved by a court's judgment has standing to appeal); *Mont. Power Co. v. Mont. Dep't of Pub. Serv. Regulation*, 218 Mont. 471, 709 P.2d 995, 1000–01 (1985) (a nonparty has standing to appeal if it "has a direct, immediate and substantial interest in the subject which would be prejudiced by the judgment or benefited by its reversal"); *Rozmus v. Rozmus*, 257 Neb. 142, 595 N.W.2d 893, 897 (1999) ("[I]n a proper case a nonparty may be sufficiently interested in a judgment to permit him or her to take an appeal from it." (internal quotation marks omitted)); *Sutherland v. ITT Residential Capital Corp.*, 122 Ohio App.3d 526, 702 N.E.2d 436, 444 (1997) ("A non-named party may also have standing to appeal if the district court has otherwise 'summoned' him into court." (internal quotation marks omitted)); *Walker v. Walker*, 362 Pa.Super. 75, 523 A.2d 782, 783–84 (1987) (allowing nonparty to appeal because she participated in the proceedings below and was aggrieved by the trial court's order); *Evans v. State (In re Evans)*, 130 S.W.3d 472, 478 (Tex.App.2004) (recognizing that "nonparties have a right to appeal from a judgment if they clearly have an interest in that judgment and if they are bound by the judgment"); *see also* 15A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3902.1 (2d ed.1976) (citing cases from the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and Federal Circuits where nonparties bound by injunctions, writs of garnishment, restraining orders, and sanctions were allowed to appeal); 9 MOORE'S FEDERAL PRACTICE § 203.03, at 3–25 (2d. ed.2012) (citing cases

¶ 37 The court today refuses to apply that exception. It does so first on the purported basis of a distinction between standing to appeal and jurisdiction over an appeal. *Supra* ¶ 23. I readily concede the difference between these two concepts. But this case has everything to do with the former and nothing to do with the latter. This is undoubtedly the kind of case over which we have appellate jurisdiction. It is certainly true that the existence of a justiciable case at the trial court level does not establish jurisdiction on appeal. *Supra* ¶ 23. Yet no one has alleged that we lack "appellate jurisdiction" in the sense of lacking power over the kind of case that is presented for our review. The only issue is whether Gilbert is a proper appellant—or in other words whether he has standing to invoke our appellate jurisdiction in this case. The answer to that question is yes, and the question cannot be avoided by the confusing insistence that we somehow lack jurisdiction, *see supra* ¶ 23, as the jurisdictional question raised by the majority turns entirely on the question of whether Gilbert is a proper appellant with standing to invoke it.[3] I would accordingly uphold his right to appeal under the uniform caselaw cited above.

¶ 38 The majority nonetheless resists my approach on two other grounds: (a) that our caselaw purportedly dictates the majority's standard and rejects mine and (b) that the framework I endorse would somehow introduce uncertainty into a field where predictability is paramount. Neither argument is sound. My approach is compatible with our precedent—at least most of it—and in fact is essential to restore predictability and coherence to our law in this field. And the majority's approach is logically untenable for another reason, in that it requires as a precondition for appeal that a defendant waive its position on the merits in order to preserve its right to appeal.

A

¶ 39 Many decisions of this court confirm the notion that party status is a functional and not purely formal inquiry.[4] First, we have recognized a "de facto intervention" principle that treats a nonparty's consistent participation in the district court as the functional equivalent of formal intervention. *See Ostler v. Buhler*, 1999 UT 99, ¶ 7, 989 P.2d 1073.[5] We have gone so far as to recognize a nonparty's right to appeal an administrative agency decision based on such intervention in an administrative hearing. *See Utah Ass'n of Cntys. v. Tax Comm'n ex rel. MCI Telecomms. Corp.*, 895 P.2d 825, 827 (Utah 1995); *Utah Ass'n of Cntys. v. Tax Comm'n ex rel. Am. Tel. & Tel. Co.*, 895 P.2d 819, 820–21 (Utah 1995). A parallel rule is one recognized in *Tremco*—that "denial of a motion to

from the 1st, 2d, 3d, 4th, 5th, 9th, and 10th circuits).

3. I acknowledge, of course, that here there is no question of Gilbert's "standing" in the sense of being " 'sufficiently adversary' " to establish a " 'case or controversy' " in the first instance. *Supra* ¶ 23. But the majority's concession of Gilbert's "standing" confuses this concept of standing at the trial court level with standing to appeal. The issue on appeal in this case is neither standing to litigate a case or controversy at the trial court level nor jurisdiction over such a case on appeal. It is whether the party seeking appellate review is a proper party to invoke appellate review. And that sense of standing is the only matter in issue.

4. For this reason, our appellate rules' repeated reference to "party" are not properly read to foreclose an appeal by a person in Gilbert's situation. *See supra* ¶ 10. Under our established caselaw, a "party" on appeal includes both formal and functional parties and is not limited to those formally designated in the caption. *Infra* ¶¶ 7-10.

5. As the majority notes, *Ostler* does not expressly endorse the proposition that "nonparties may take appeals as of right under our appellate rules." *Supra* ¶ 24. The *Ostler* case does, however, recognize the principle of "de facto intervention"—the notion that nonparties participating consistently in proceedings below may be treated as though they had intervened formally. And if a nonparty seeking formal intervention has a right to appeal, as the court recognizes, *supra* ¶ 15, then under *Ostler* a de facto intervenor must likewise have standing to appeal. In both instances the law would cut past the formal question of party designation and consider whether the would-be appellant effectively participated as a party below—and would recognize a right to appeal for both a movant whose intervention motion is denied and for a nonparty granted "de facto party" status.

intervene is an appealable order." [6] 2005 UT 19, ¶ 46 n. 7, 110 P.3d 678. This principle is along the same lines. It cuts past the formal question of nominal party designation and asks whether the order appealed from is one directed at the appellant. Because an order denying a motion to intervene is directed at a would-be intervenor, the would-be intervenor has a right to appeal as a functional party despite the lack of any formal designation as such.

¶ 40 Another line of our cases effectively applies this standard without expressly discussing it. In these cases, we have unquestioningly allowed nonparties to appeal sanctions or court orders entered against them without ever mentioning their failure to intervene or raising any concern about their lack of formal party status.[7] Although these cases do not address the question of standing of a nonparty to appeal, they confirm that the prevailing approach to this issue in Utah has been to uphold the exception recognized in the uniform caselaw in other jurisdictions.[8]

¶ 41 Finally, and perhaps most tellingly, one of our cases goes so far as to dismiss a nonparty's attempt to challenge a contempt sanction by extraordinary writ on the ground that his "contempt sanction [was] subject to an appeal in the case in chief." *Fugal v. Howard*, 2007 UT 88, ¶ 1, 171 P.3d 451 (per curiam). *Fugal* is thoroughly incompatible with the approach adopted by the majority opinion. It reaffirms the right of appeal for a nonparty who is subjected to a court order—a rule that makes good sense as a policy matter and that is also in line with the uniform precedent in other jurisdictions.

¶ 42 Our cases thus preserve a right of appeal not just for formally named parties but also for those who are treated as such as a practical matter. The gateway to appeal, in other words, is not limited to those formally intervening as claimants or formally served as defendants, but also is open to those who effectively participate as claimants or who are subjected to a coercive order as defendants.

¶ 43 To the extent that *Tremco* advocates and applies a different rule, I would overrule it. *Tremco* held, in part, that an entity subjected to a court order but not formally served as a party lacked standing to seek appellate review of such an order. *See* 2005 UT 19, ¶ 46, 110 P.3d 678. In support of that conclusion, *Tremco* cited only one case, *State v. Sun Surety Insurance Co.*, 2004 UT 74, ¶ 9, 99 P.3d 818, as authority. *See* 2005 UT 19, ¶ 46, 110 P.3d 678. But *Sun Surety* does not support *Tremco*'s broad rule. *Sun Surety* simply stands for the proposition that nonparties cannot bring a direct appeal in a *criminal* action. *See Sun Sur.*, 2004 UT 74, ¶ 9, 99 P.3d 818. And the grounds for limiting

---

**6.** Because appellate courts review appeals from intervention denials, we do, as the majority states, carry "the burden of deciding at least some contested interventions." *See supra* ¶ 17. But that is not a result of the rule I advocate, as the majority intimates. *See supra* ¶ 17. It is a result of well-settled Utah law.

**7.** *See Featherstone v. Schaerrer*, 2001 UT 86, 34 P.3d 194 (Utah 2001) (attorney allowed to appeal order requiring him to pay costs and fees associated with a motion to compel); *Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462 (Utah 1998) (attorney allowed to appeal rule 11 sanctions); *Utah Farm Prod. Credit Ass'n v. Labrum*, 762 P.2d 1070 (Utah 1988) (attorney allowed to appeal contempt order issued against him after he violated a writ of garnishment).

**8.** The majority's attempt to distinguish this line of cases is unpersuasive. It may be that the cited cases involve orders imposing "sanctions and contempt orders against attorneys in their representative capacities." *Supra* ¶ 25. But our opinions in those cases never attempted to announce a special rule for attorneys; they instead reflect

the general principle that those subject to coercive court orders have standing to appeal.

Any such special rule for attorney sanctions, moreover, would be legally and logically groundless. If a nonparty attorney has standing to appeal a minor reprimand or de minimis sanction, he should *a fortiori* have standing to appeal a substantial monetary award. If there is a distinction between the two kinds of orders, it should cut the other way—in favor of a right to appeal in a case involving a significant monetary award. Our cases have never articulated the opposite distinction—allowing attorney appeals from mere reprimands or sanctions but foreclosing them from substantial monetary judgments—and there is no basis for doing so here.

Singling out attorneys in any way for special rights to appeal seems backwards. Attorneys are better positioned to protect their own rights than are nonattorneys. And the fact that attorneys may expect to be subject to court orders while nonparties may not is more reason to afford appeal rights to nonparties rather than less.

appeals in criminal actions do not translate well to the civil context. I would accordingly repudiate this aspect of *Tremco* as incompatible with the sound principles of standing to appeal recognized in the uniform caselaw cited above.

¶ 44 Indeed, the rationale behind that caselaw strikes me as incontrovertible: "Due process dictates and principles of fairness counsel that [a nonparty] be given an opportunity to challenge the district court's assertion of jurisdiction over it, *particularly when* the court specifically entered an injunction against [it]." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 955 (4th Cir.1999) (emphasis added). When a court order is entered against a person who has been denied the protections associated with formal party status, the right to appeal should be clear. The lack of formal status as a party cannot reasonably cut against the right to appeal. If anything, a person subjected to a court order without the right to participate as a full-fledged party should be in a stronger position to appeal.

¶ 45 This rule recognizes the not unusual circumstance illustrated in this case: Sometimes nonparties become "subject to ongoing court proceedings" even when they have not received service of process, filed a suit, or sought formal intervention. *See supra* ¶ 18. When this occurs, we cannot deny them a right to appeal without treading on their rights of due process. *See supra* ¶ 18. The only barrier to that sensible conclusion is *Tremco*. That decision should be overruled to restore coherence to our law of standing on appeal.

B

¶ 46 I am certainly on board with the majority's aspiration for certainty in the law of standing to appeal. But there is no basis for the court's assertion that the rule I advocate would sow the seeds of confusion. *See supra* ¶¶ 17–18. There is nothing at all uncertain about granting nonparties like Gilbert standing to appeal. The line I propose is as bright a line as can be drawn: If a nonparty is subject to a coercive court order, then it must be afforded an appeal of right, whether or not it sought formal status by intervention.

¶ 47 Ultimately, the uncertainty the majority laments is not the product of the rule that I would embrace. I concede that unnamed parties cannot always "be certain whether they will be treated as a 'de facto party.'" *See supra* ¶ 18. But any confusion on that front would not arise from operation of the rule that I endorse, which is simple and straightforward. Instead, the confusion the majority identifies is properly assigned to the doctrine of "de facto intervention" under *Ostler*—in cases where a nonparty claims a right to appeal based on its consistent participation in court proceedings. *See* 1999 UT 99, ¶ 7, 989 P.2d 1073. That brand of informal party status is admittedly fact intensive. But that doctrine is already established in our law. Thus, the "de facto intervention" principle is not a consequence of the approach I would take. It is a firmly rooted, logical foundation for it.

¶ 48 That foundation is *Ostler*'s abandonment of a purely formal framework for determining party status. Having accepted into our law a standard calling for a subjective inquiry into the extent of "de facto party" status, as we did in *Ostler*, we cannot defensibly decline to take a logically parallel—but less perilous—step toward treating parties subject to coercive court orders as de facto parties with standing to appeal. True commitment to the eradication of fact-intensive questions about "de facto party" status would require that *Ostler* be overruled. The majority's decision to reaffirm it leaves it in no position to criticize a logical extension of *Ostler* that implicates none of the majority's concerns about uncertainty or confusion.

¶ 49 For the same reason, the majority's decision perpetuates an internal conflict in our caselaw and postpones for another day its resolution. After today's decision, our cases establish the following principles on the standing of parties to appeal in Utah: (a) a person who participates consistently in the proceedings below but is not granted formal party status through intervention is nonetheless a proper party appellant under the doctrine of "de facto intervention" (*Ostler*); (b) some persons subject to coercive court or-

ders—attorneys subject to sanctions or contempt orders for conduct related to their representation of clients—are also proper parties on appeal despite the lack of formal intervention (*Fugal*); but (c) other persons subject to coercive court orders—those subject to damages awards rather than attorney sanctions or contempt orders—are not proper parties unless they become formal parties by formal intervention (*Tremco*). The *Tremco* principle is fundamentally at odds with our other cases. It should be overruled in the interest of a logical, coherent appellate regime.

¶ 50 The majority derides that suggestion, claiming that its approach advances consistency in our precedent and that mine undermines it. *Supra* ¶¶ 16–22. I do not see it that way. I see no path from our current precedent that provides any consistent, manageable principle of standing on appeal. If we are to maintain a logically defensible framework on these issues, we must either take *Tremco* to its logical end and require formal party status as a hard-and-fast rule of standing on appeal, or take the principle of *Ostler* and *Fugal* and consider party status from a practical, de facto perspective.

¶ 51 The court has done neither, opting instead to try to preserve all of our cases. But the decision to do so rests on artificial, arbitrary distinctions—giving *attorneys of record* a right to appeal but declining that right to nonattorneys, and recognizing "de

facto party" status for a person *asserting a claim* (and participating consistently but failing to intervene) while refusing to recognize a parallel status for a person *subject to such a claim* (who consistently rejects any obligation to participate on the ground that he has not yet been made a party). And those distinctions, in my view, only postpone for another day the question whether our law of standing to appeal requires formal party status or considers the practical realities of the case. Most every other jurisdiction has opted for the latter approach, at least in cases involving coercive damages awards against nonparties. That approach makes eminent sense. We should adopt it even if it requires a *mea culpa* on *Tremco*.

C

¶ 52 Finally, I find the logic of the majority's approach problematic and ultimately untenable. In faulting a *defendant* for not seeking intervention, the court misses a fundamental distinction between parties asserting claims for relief and parties responding to them. It may make sense to require intervention (or at least the functional equivalent of it) for a *plaintiff* to become a viable party on appeal, but imposing a parallel requirement on a *defendant* is problematic.[9] The understandable litigation strategy for at least some defendants is to resist the court's jurisdiction over them—reserving the right to defend in a different forum or perhaps not at all. If we require defendants to intervene

---

9. In any event, the standard this court apparently applies to plaintiffs is fundamentally different from the standard we apply to defendants. Plaintiffs can become parties without formally intervening if they participate consistently in the litigation. That is the doctrine of "de facto intervention." It rests on the notion that a claimant who participates consistently in the same way a formal plaintiff would participate is effectively a plaintiff. Yet the decision today (and the one in *Tremco*) treats nonparty defendants differently. For many nonparty defendants, the full extent of the participation they seek is to repudiate and challenge the court's jurisdiction over them in the absence of formal service. It makes no sense to deny them de facto defendant status on the ground that they didn't do more, as doing more would sacrifice their position on the merits and extend beyond the participation they have sought.

It is worth noting, on that score, that the majority's approach apparently doesn't require

even that much participation by a nonparty defendant to foreclose the right of appeal. The key is the failure to intervene, so the right of appeal would be cut off even in a case where the nonparty subject to a coercive damages award by the court never had *any* notice of the proceedings or *any involvement* in the proceedings. Such a nonparty obviously would have a due process basis for challenging such an award. But it makes no sense to relegate that nonparty defendant to the uncertainty of a *mandamus* action. In that circumstance, the nonparty defendant has done everything it reasonably could have done (nothing) to participate in the action, and it can hardly be faulted for failing to intervene. The same holds for a nonparty defendant like Gilbert. He did all that he could reasonably have done in participating in the case, and he cannot lose his right of appeal by failing to take the untenable step of intervention.

to preserve their right to appeal, we have effectively foreclosed a broad class of defenses otherwise available to defendants. After all, intervention is the voluntary invocation of the court's jurisdiction, and a party who intervenes thus waives any right to object on personal jurisdiction grounds.[10]

¶ 53 Application of the majority's approach effectively precludes Gilbert from preserving his right to appeal on the defense he asserted in this case. Gilbert's essential position in this suit is that he is not a proper "party" served with process and thus cannot be subjected to a coercive order of the court. If he were required to intervene, he would effectively be forced to abandon his position on the merits—that he is a nonparty beyond the court's jurisdiction—in order to establish his right to appeal. Intervention, after all, would have established Gilbert's status as a voluntary party, thus foreclosing any argument challenging the court's jurisdiction over him. That is not and cannot be the law. Our rules of standing to appeal cannot require a person who challenges the court's jurisdiction to abandon his position on the merits in order to preserve a right to appeal.

¶ 54 It is no answer to note that a person in Gilbert's position may protect his rights through an extraordinary writ. This court has long recognized the discretionary nature of such writs. See, e.g., Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Lindberg, 2010 UT 51, ¶ 24, 238 P.3d 1054 (stating that extraordinary relief pursuant to an extraordinary writ is "completely at the discretion of [this court]" (alteration in original) (internal quotation marks omitted)). In the context of such a writ, we can deny a petition even in the face of obvious errors below[11] while subjecting petitioners to a higher burden to invoke our jurisdiction.[12] It is entirely possible that this discretion

would be exercised summarily to defer to the lower court's decision.

¶ 55 I do not share the majority's optimism about an appellate court's ability to adjust—or decrease—its discretion to account for due process claims. See supra ¶ 19. Perhaps an appellate court would do so. But I can find—and the majority cites—no clear expression of Utah law to that effect. See supra ¶ 19. Relegating directly affected nonparties to the backwater confines of discretionary review cannot possibly "promote[ ] fairness" and "quick review" of claims or guarantee the protection of due process. See supra ¶ 31. As compared to an appeal of right, it will have the opposite effect.

¶ 56 An appeal of right is the gold standard. When a court's order or judgment directly affects nonparties' rights or interests, they deserve and the law demands that they receive nothing less. There is nothing at all confusing or uncertain about a rule that makes sure they get it. See supra ¶¶ 17–18. Indeed, the court has not identified any concrete problems with this approach, let alone illustrated them as being born out in caselaw. True, nonparties, like captioned parties, will have to follow the case and "wait until the suit reaches resolution to the point of an appealable final order." Supra ¶ 21. But such are the demands our rules place on all appealing parties. Nonparties bound by coercive court orders—being parties—must navigate the same obstacles faced by captioned parties. There is nothing unfair or unreasonable about that reality.

¶ 57 A "de facto party" like Gilbert would have at its disposal a range of procedures available for all parties to hasten timely appellate review. For instance, rather than wait to appeal until final judgment is entered as to all parties, a "de facto party" facing a

---

**10.** See C.F. v. D.D. (In re Adoption of B.B.D.), 1999 UT 70, ¶ 29, 984 P.2d 967 (rejecting jurisdictional challenge because party "voluntarily invoked and submitted to the jurisdiction of Utah, its laws, and its court system when he intervened in the ... proceeding"); see also Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Bayshore Ford Trucks Sales, Inc.), 471 F.3d 1233, 1248 (11th Cir.2006) (same); Cnty. Sec. Agency v. Ohio Dep't of Commerce, 296 F.3d 477, 483 (6th Cir.2002) ("[A] motion to intervene is fundamen-

tally incompatible with an objection to personal jurisdiction.").

**11.** State v. Barrett, 2005 UT 88, ¶ 23, 127 P.3d 682.

**12.** See Utah R. Civ. P. 65B(a) (requiring writ petitioners to show that there is no "plain, speedy, and adequate remedy available" elsewhere).

coercive order could move for rule 54 certification in the trial court and obtain immediate resolution of its claims at the appellate level. *See* UTAH R. CIV. P. 54(b); *see also supra* ¶ 21.[13] Thus, I see no basis for the majority's speculation about the delay and uncertainty facing Gilbert, who under the approach I endorse would have every right to seek an immediate appeal instead of awaiting final judgment as to other parties.

¶ 58 In any event, the fact that some de facto parties may not become aware of a coercive order against them until the time for appeal has passed, *supra* ¶ 30, is no reason to deny rights of appeal to *all nonparties* facing satisfaction of a court order. De facto parties who, by no fault of their own, missed their opportunity to appeal can move for an extension of time under rule 4(e) of the Utah Rules of Appellate Procedure. *See Reisbeck v. HCA Health Servs. of Utah, Inc.,* 2000 UT 48, ¶ 13, 2 P.3d 447 (noting that this rule "permits a trial court to extend the time for filing a notice of appeal based on ... good cause, which pertains to special circumstances that are *essentially beyond a party's control*"). Under this "liberal" standard, the trial court can—and very likely would—exercise its "broad discretion" to grant a motion to extend the time to file notice of appeal. *See id.* ¶¶ 14–15. True, a motion for extension of time to appeal must be "filed not later than 30 days after the expiration of the time prescribed [to appeal]." UTAH R.APP. P. 4(e). So it is possible, though it would likely be rare, for a "de facto party" to miss this deadline. But even then the "de facto party" is not without remedy. In such rare cases, an extraordinary writ would be the proper vehicle to vindicate rights abused at the trial court level. *See* UTAH R. CIV. P. 65B(d)(2).

¶ 59 Thus, because our rules provide safeguards to deal with the concerns raised by the majority, there is no reason to think that the rule I advocate would undermine "predictability and certainty." *See supra* ¶ 30. My approach preserves predictability and certainty in a larger sense, and relies on the

relief valves already built into the law to deal with rare circumstances where de facto defendants might miss a right of appeal by mistake. I see no reason in logic or law for the majority's contrary position, which is to invoke the occasional possibility of a missed deadline to foreclose the right of appeal in all cases.

## II

¶ 60 That said, this case is still subject to dismissal on jurisdictional grounds. I would dismiss on the ground that Gilbert's notice of appeal from the district court's Disgorgement Order was premature—and thus improper—and that his subsequent 60(b) motion to vacate was untimely and thus insufficient to revive his right to appeal.

¶ 61 Utah Rule of Appellate Procedure 3(a) permits a party to appeal "final orders and judgments." "[A] judgment is final only if it dispose[s] of the case as *to all the parties,* and.... ends the controversy between the parties." *DFI Props. LLC v. GR 2 Enters. LLC,* 2010 UT 61, ¶ 17, 242 P.3d 781 (second alteration in original) (internal quotation marks omitted). Though the Disgorgement Order was entered on June 13, 2008, that order was not final. It thus became appealable only upon entry of the district court's March 4, 2011 order dismissing the intervenors' claims—the only remaining claims— and concluding all matters in the case.

¶ 62 Yet Gilbert filed his notice of appeal on February 11, 2011. Though we have some discretion to consider premature notices of appeal as "relating forward" to a subsequent judgment, *see Wood v. Turner,* 18 Utah 2d 229, 419 P.2d 634, 634–35 (1966), our discretion is circumscribed by rule. *See* UTAH R.APP. P. 4(c) (notice of appeal filed "after the announcement of a decision" but before entry of judgment treated as filed after such entry). Under the rule and under our cases, we may exercise the discretion to

---

13. I cannot agree that the majority's approach "promotes fairness and certainty by giving nonparties clear instructions on how to navigate the appellate rules." *See supra* ¶ 31. There is nothing fair or certain about a requirement of inter-

vention by a defendant who abjures the court's jurisdiction, much less about relegating any request for review to procedures outside the rules of appellate procedure.

deem a premature notice to "relate forward" in only limited circumstances—where the notice of appeal is filed after the announcement of a decision (as in a minute entry) but before entry of the final judgment or order. *See Nelson v. Stoker*, 669 P.2d 390, 392–93 (Utah 1983) (recognizing that this approach "reflects the great weight of authority").[14] But that is not what happened here.[15] Accordingly, I would hold that Gilbert's notice of appeal was premature and did not function as a notice of appeal that would relate forward to the final judgment.

¶ 63 In addition to filing an improper notice of appeal, Gilbert waited more than two years and then filed a motion to vacate the Disgorgement Order in the district court (in November 2010). But that motion was untimely, and it thus failed to revive his right to challenge the Disgorgement Order—a challenge that was available but not made in an appeal. A 60(b) motion must be "made within a reasonable time" at the outside, and within three months if it is grounded on subsections (1), (2), or (3). Utah. R. Civ. P. 60(b). Gilbert's motion does not appear to have been grounded on one of the first three subsections, so the applicable timing rule was "within a reasonable time." His motion could not satisfy that requirement. He filed it more than two years after the fact, and did so on grounds that were available to him at the time of the briefing and argument on the original Disgorgement Order.

¶ 64 I would accordingly find the motion to be untimely and thus improper under rule 60(b). The motion to vacate was essentially a motion to reconsider the Disgorgement Order. Yet Gilbert had lost the right to challenge or reconsider the disgorgement when he failed to file a proper notice of appeal. And his subsequent, untimely 60(b) motion could not revive that right.

¶ 65 Our decision in *Garcia v. Garcia*, 712 P.2d 288 (Utah 1986) (per curiam), is distinguishable and does not command a different result. *Garcia* simply holds that a 60(b) motion questioning the sufficiency of service of process is one challenging a judgment entered without notice as "void." *Id.* at 290. That made sense in *Garcia* because there the defendant never had notice of the action and thus never had a chance to challenge the court's jurisdiction over him. *Id.* at 289. But this case is quite different. Here Gilbert *did* have an opportunity to challenge the court's jurisdiction over him at the time of briefing and argument on the motion to disgorge. He chose not to raise that challenge and thus waived his right to assert it now. *See* Utah R. Civ. P. 12(b) (providing that if a party fails to assert a personal jurisdiction defense, the defense is waived); *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 438 (Utah 1998) (noting that objection to personal jurisdiction is waived if not timely raised). Thus, when the Disgorgement Order was incorporated in the final judgment entered by the district court, Gilbert's only avenue for questioning that decision was an appeal. Having failed to perfect an appeal, Gilbert could not use rule 60(b) as a mechanism for a collateral attack on the judgment—least of all on grounds that he failed to preserve the underlying motion to disgorge. His attempt to do so was improper and untimely, and it could not revive his right to appeal.

¶ 66 The caselaw under rule 60(b) supports this view. In cases under the federal counterpart to our rule, the courts have expressly refused to endorse the use of a 60(b) motion to collaterally attack a prior decision on grounds that could have been raised at the time of the initial judgment.[16] These cases

14. *See also C.M.C. Cassity, Inc. v. Aird*, 707 P.2d 1304, 1304–05 (Utah 1985); 16A Charles Alan Wright et al, Federal Practice and Procedure: Jurisdiction § 3950.5 (4th ed.2008) (notices of appeal filed even before an announcement of a final decision are not acceptable "because the appellee's belief that the obviously interlocutory decision was the final judgment would not be reasonable" (internal quotation marks omitted)).

15. The minute entry associated with the district court's March 4, 2011 order was entered on

February 17, 2011. Had Gilbert filed his notice of appeal after that date, it would have been timely under our precedent.

16. *See e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir.2007) (refusing to grant a rule 60(b) motion on jurisdictional grounds where the party actually appeared in court but failed to challenge personal jurisdiction there; "[w]e see no reason to require the district court to raise sua sponte affirmative defenses, which may, of course, be waived or forfeited, on behalf of an

thus cabin the principle we recognized in *Garcia*. They hold that although a 60(b) motion can be filed at any reasonable time, such a motion cannot be employed to reopen a decision on grounds that could have been raised earlier. *See Ferdman v. Consulate Gen. of Israel,* No. 98 C 1555, 1999 WL 92917, at *2 (N.D.Ill. Feb. 17, 1999). The *Garcia* rule, in other words, applies where the defendant has not yet had a chance to raise and challenge the court's jurisdiction over a party (e.g., in a case of a default judgment).[17]

¶ 67 Thus, I ultimately agree with the disposition of dismissal of this case on appeal, but would do so on the alternative ground that the 60(b) motion to vacate was untimely and thus the appeal would have to have been filed within ninety days of the initial judgment in the case. Because no notice of appeal was filed in the wake of that judgment, I would dismiss the case on that ground without reaching the merits, and without establishing a rule on standing to appeal that is both legally and practically problematic.

appearing party who elects not to pursue those defenses for itself"); *Ferdman v. Consulate Gen. of Israel,* No. 98 C 1555, 1999 WL 92917, at *2 (N.D.Ill. Feb. 17, 1999) ("[O]n a Rule 60(b)(4) motion based on a lack of personal jurisdiction, the moving party must show not only a lack of personal jurisdiction, but also that he or she did not waive the lack of jurisdiction and voluntarily submit to the court's jurisdiction.") (quoting 12 MOORE'S FEDERAL PRACTICE § 60.44[3] ).

**17.** The majority mistakenly reads this point as attempting to distinguish *Garcia* based on actual notice. *See supra* ¶ 29. That is incorrect. I distinguish *Garcia* on waiver grounds.