2016 UT App 114

# THE UTAH COURT OF APPEALS

THOMAS D. BOYLE,
Appellant,

*v.*

CLYDE SNOW & SESSIONS PC,
Appellee.

Opinion
No. 20140820-CA
Filed May 26, 2016

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 090400630

Thomas D. Boyle, Appellant Pro Se

Jeffery S. Williams, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1 Thomas D. Boyle represented Dawn Woodson in a wrongful death action while he was employed by the law firm Clyde Snow & Sessions PC (Clyde Snow) and then later by Prince Yeates & Geldzahler (Prince Yeates). After six years of litigation the parties reached a settlement. Clyde Snow asserted a lien on a portion of the settlement funds for attorney fees. Prince Yeates interpleaded a portion of the settlement, and the district court awarded those funds to Clyde Snow. Boyle appeals the district court's order awarding the money to Clyde Snow. Because we determine Clyde Snow did not properly intervene, we conclude the district court lacked jurisdiction to award it attorney fees. We therefore reverse.

BACKGROUND

¶2    In 2007, fifteen-year-old Caleb Jensen died while participating in a wilderness therapy program. His mother, Dawn Woodson, retained Clyde Snow to represent her in a wrongful death action. Boyle was lead counsel on the case. Woodson signed a contingency-fee agreement specifying that Clyde Snow would retain forty percent of any recovery. The agreement stated: "[Y]ou agree that [Clyde Snow] shall have a lien on any claim, suit or recovery for fees, costs and expenses arising out of or related to this Agreement and to the claims to which this Agreement relates." The agreement further provided that if Woodson discharged the firm, "[Clyde Snow] shall be compensated for the reasonable value of the Firm's services."

¶3    In June 2010, three years after the case began, Boyle left Clyde Snow and joined Prince Yeates, and Woodson opted to have her case follow him there. Clyde Snow then filed a notice of its attorney lien. While he was with Prince Yeates, Boyle continued to represent Woodson until the case settled.

¶4    On May 30, 2013, the parties to the wrongful death suit informed the district court that they had reached a settlement agreement and successfully moved to vacate the trial dates. In early June, the defendants moved to dismiss the plaintiffs' claims with prejudice. But in late June, before the court made a decision regarding the defendants' motion to dismiss, Clyde Snow filed a restated notice of its attorney lien and "object[ed] to the dismissal of [the underlying action] until the issues raised by the Attorney's Lien ha[d] been resolved."

¶5    The court held a telephonic hearing regarding the defendants' motion to dismiss in July 2013, and addressed Clyde Snow's objection to dismissal. During the hearing, Blake S. Atkin, on behalf of Boyle and Prince Yeates, expressed their intent to object to Clyde Snow's attorney lien. The defendants expressed concerns about keeping the case open, explaining that

there was a confidentiality agreement in the settlement and that they were "concerned that an ongoing dispute between two . . . well known law firms in this valley [was] likely to attract some attention." The defendants also pointed out that Utah Code section 38-2-7(4) "provides that an attorney can enforce a lien either by intervening in a pending action, which [Clyde Snow] has not . . . done yet, or by filing a separate legal action." They ultimately expressed that they thought it would "be a lot fairer to the defendants to dismiss this action," "to close out this case," and to have Clyde Snow file a separate suit against Prince Yeates or Boyle. Clyde Snow responded that it should not have to forgo its option to intervene. The court ruled it would dismiss Woodson's claims and keep the case open for the limited purpose of resolving Clyde Snow's attorney lien, reasoning that it did not make "a whole lot of sense to initiate a new lawsuit." The court further ordered Prince Yeates and Clyde Snow to file briefs regarding their positions on the attorney lien (Position Statements) and ordered them to undergo mediation. It added that no other briefing would be allowed.

¶6     Woodson later filed a motion to "nullify" Clyde Snow's lien, arguing that Clyde Snow failed to follow the statutory requirements for perfecting a lien.[1] She also argued Clyde Snow had not properly intervened as a party in the action and thus had not invoked the court's jurisdiction to enforce the lien. This

---

1. The identity of Atkin's client is not clear. On August 9, 2013, Atkin filed a notice of appearance for Woodson and filed Woodson's motion to "nullify" Clyde Snow's attorney lien. But that same day, Prince Yeates filed its Position Statement, indicating Atkin was representing Boyle and would be filing a separate Position Statement. Atkin also purported to represent Boyle and Prince Yeates at the July 2013 hearing. Although Clyde Snow points out the inconsistency, no one argues that it was improper. Because the motion caption identified Woodson as the plaintiff, and Atkin as her attorney, we accept it as her motion.

motion was never submitted for decision, and the court therefore did not address it. Woodson did not participate further in the case.

¶7 After the court dismissed the underlying action, Clyde Snow, Prince Yeates, and Boyle engaged extensively with each other over the disputed attorney fees. Prince Yeates filed its Position Statement explaining that the dispute involved Clyde Snow, Boyle, and another attorney who worked on the case, but not Prince Yeates. Prince Yeates disclaimed any interest in the funds and informed the court that it had set aside funds in trust as security for any interest Clyde Snow might have.

¶8 Clyde Snow's Position Statement argued that the underlying case originated with Clyde Snow through a contingency fee agreement with Woodson and that it was entitled to receive the reasonable value for the services it provided. It also disputed Woodson's motion to nullify, arguing the motion was based on "the false assumption that Clyde Snow's representation . . . was terminated for cause."

¶9 In January 2014, Clyde Snow filed another restated notice of its lien, and Boyle requested an evidentiary hearing. Prince Yeates filed a motion asking to "interplead" the disputed funds into a court account. Clyde Snow consented, and Boyle responded by disputing the amount to be interpleaded. The court granted Prince Yeates's motion. After the funds were interpleaded, Clyde Snow filed a document, titled "First Amended Complaint Regarding Entitlement to Interpled Funds and Response to Any Crossclaim," asserting its claim to the settlement funds. Boyle answered Clyde Snow's purported complaint, arguing the firm should not receive any of the funds because it had mismanaged the case.[2] Boyle also gave an account

---

2. Boyle also asserted a purported counterclaim which was later dismissed.

of the troubled history he had with Clyde Snow during his employment with, and exit from, that firm.

¶10 In April 2014, Boyle moved to dismiss Clyde Snow's purported complaint because it failed to intervene as required by rule 24 of the Utah Rules of Civil Procedure. The district court denied Boyle's motion, concluding that Clyde Snow was a "proper interpleader party" and any procedural objection regarding the requirement to file a formal motion to intervene "had been resolved by prior court orders" and "the establishment of an interpleader" account. It further explained that Clyde Snow had "substantially complied" with the requirement to intervene, and any objection Boyle might have had was waived "based on the substantial process and other events that ha[d] occurred" since the dismissal of the underlying case. The court ultimately awarded all of the interpleaded funds to Clyde Snow.

¶11 Boyle appeals.

ANALYSIS

¶12 Boyle presents this case as an appeal taken as a matter of right under Utah Code section 78A-3-102(3)(j), and both parties to the appeal focus their arguments on the merits of the district court's decisions. But we see more fundamental jurisdictional and procedural problems with this appeal. Neither Boyle nor Clyde Snow formally intervened in the action below and, aside from their interest in being paid for representing Woodson, neither has a stake in the subject matter of the underlying action. Utah appellate courts have held "that persons or entities that are not parties to a proceeding are not entitled to an appeal of right." *See Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 9, 293 P.3d 241. Our courts have also held that a district court's order "'in favor of a person who is not a party to the action or proceeding is void because the court has no jurisdiction to make it.'" *See Ostler v. Buhler*, 1999 UT 99, ¶ 7, 989

P.2d 1073–74 (quoting *Openshaw v. Openshaw*, 12 P.2d 364, 365 (Utah 1932)). Subject matter jurisdiction is not a matter of the court's discretion, *see Crump v. Crump*, 821 P.2d 1172, 1173–74 (Utah Ct. App. 1991), and "[a] lack of jurisdiction can be raised at any time by either party or by the court," *see Utah Down Syndrome Found.*, 2012 UT 86, ¶ 7 (citation and internal quotation marks omitted). Accordingly, as a threshold matter, we must determine whether Clyde Snow properly intervened in the underlying action to enforce its attorney lien. If it did not, the district court had no jurisdiction and any order based on motions made by and for the interests of the non-parties are void. *See Ostler*, 1999 UT 99, ¶ 7. Whether Clyde Snow properly intervened in the underlying action or whether the parties waived any objection to Clyde Snow's participation in the case present questions of law, which are reviewed for correctness. *Id.* ¶ 5.

## I. Intervention

¶13 An attorney seeking to enforce an attorney lien must do so either "by filing a separate legal action" or "by moving to intervene in a pending legal action." Utah Code Ann. § 38-2-7(4)(a) (LexisNexis 2014). This section does not confer an unconditional right to intervene. *See Bishop v. Quintana*, 2005 UT App 509U, para. 5. Instead, a person desiring to intervene must submit a "timely application" and "shall serve a motion to intervene upon the parties as provided in Rule 5." Utah R. Civ. P. 24(a)–(c); *see also Ostler*, 1999 UT 99, ¶ 7 (explaining that the use of the term "shall" means "that, absent waiver by the parties, non-parties must adhere to the procedural requirements of Rule 24(c) in order to intervene in an action").

¶14 Generally, a motion to intervene is timely only "if it is filed before the final settlement of all issues by all *parties*, and before entry of judgment or dismissal." *See Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶¶ 24–26, 297 P.3d 599 (emphasis added) (citations and internal quotation marks omitted); *see also Gardiner v. Taufer*, 2014 UT 56, ¶ 18, 342

P.3d 269; *Parduhn v. Bennett*, 2005 UT 22, ¶ 15, 112 P.3d 495; *Jenner v. Real Estate Servs.*, 659 P.2d 1072, 1074 (Utah 1983); *Skypark Airport Ass'n v. Jensen*, 2011 UT App 230, ¶ 3, 262 P.3d 432; *Fisher v. Fisher*, 2003 UT App 91, ¶ 20, 67 P.3d 1055. The Utah Supreme Court has explained that "courts are reluctant to make exceptions to [this] general rule and do so only upon a strong showing of entitlement and justification." *Jenner*, 659 P.2d at 1073–74 (citations omitted). It also has explained that allowing intervention post-judgment is disfavored because it tends "to prejudice the rights of existing parties" and can interfere with the "orderly processes of the court."[3] *Id.*; *accord Parduhn*, 2005 UT 22, ¶ 15. Thus, "absent waiver by the parties, non-parties must adhere to the procedural requirements" of rule 24 of the Utah Rules of Civil Procedure to timely intervene in an action. *Ostler*, 1999 UT 99, ¶ 7.

¶15 Here, Clyde Snow did not file a timely motion to intervene. First, the only filing on behalf of Clyde Snow submitted before the parties' settlement was a notice of Clyde Snow's lien. After the parties' settlement but before the court dismissed Woodson's claims, Clyde Snow filed a restated notice of its attorney lien and an objection to the parties' motion to dismiss the case, which stated that "Clyde Snow reserve[d] its

---

3. Indeed, the Utah Supreme Court has noted that this rule is consistent with its instruction that, absent "'special circumstances,'" an attorney lien should be enforced in a separate action. *Ostler v. Buhler*, 1999 UT 99, ¶ 9 n.3, 989 P.2d 1073 (quoting *Midvale Motors, Inc. v. Saunders*, 442 P.2d 938, 941 (Utah 1968)); *see also Dahl v. Dahl*, 2015 UT 79, ¶ 211 n.33 (advising an attorney to file a separate suit to recover fees); *Neilson v. Neilson*, 780 P.2d 1264, 1271 (Utah Ct. App. 1989) (explaining that generally attorney liens "may not be foreclosed by way of the attorney's request for that relief in the original action; instead, counsel must bring a separate action against the client to determine the amount of the fee and foreclose the lien").

statutory right to intervene." But Clyde Snow never actually moved to intervene in the pending action.

¶16    Second, even if we construed Clyde Snow's objection as a deficient attempt to intervene, it was not filed in a timely fashion. *See Supernova Media*, 2013 UT 7, ¶ 24. Clyde Snow filed its objection on June 28, 2013, weeks after the actual parties had settled and resolved their dispute, after the parties' motion to dismiss the case with prejudice, and after the court granted the parties' motion to vacate the trial dates. The record shows that the court's only reason for not dismissing and closing the case was Clyde Snow's improper objection; no other issues between the parties remained unresolved in the underlying action when Clyde Snow objected to the parties' motion to dismiss. *See Skypark Airport Ass'n*, 2011 UT App 230, ¶¶ 3–7 & n.2 (holding that the trial court did not err by denying a non-party's motion to intervene as untimely when the non-party filed its motion after the verdict but before judgment was entered). Thus, unless the parties waived their right to object to Clyde Snow's intervention, its failure to timely intervene means it was not a party when it filed its motion and the court lacked jurisdiction to order distribution of the disputed settlement funds. *See Ostler v. Buhler*, 1999 UT 99, ¶¶ 7–8, 989 P.2d 1073.

## II. Waiver

¶17    Waiver is the only exception to the procedural requirements for intervention under rule 24 of the Utah Rules of Civil Procedure. *See id.* ¶ 7. Parties to an action may waive the formal intervention requirements by implicitly or explicitly allowing a non-party's consistent participation in a pending action. *See Utah Ass'n of Counties v. Tax Comm'n*, 895 P.2d 825, 827 (Utah 1995) (holding that a party waived its right to object to a non-party's intervention because the non-party significantly participated in the proceedings, including conducting cross-examinations, without objection); *Utah Ass'n of Counties v. Tax Comm'n*, 895 P.2d 819, 820–21 (Utah 1995) (holding that a party waived its right to challenge a non-party's intervention because

the nonparty had "participated throughout the entire" proceeding without objection). *But see Ostler*, 1999 UT 99, ¶¶ 7–9 (holding that, even though the party failed to respond to a non-party's motions for two years, the party did not waive his right to object to the non-party's intervention); *Fisher*, 2003 UT App 91, ¶ 19 (holding that the parties did not waive the intervention requirement because one party objected to the non-party's participation in the action and the non-party did not attempt to participate until after judgment was entered). But, as the Utah Supreme Court noted in *Ostler*, in cases where the court has recognized waiver, the parties to the action allowed "the non-party to intervene not only by failing to object to the non-party's presence but also by failing to object to the non-party's actual participation in the underlying action." *Ostler*, 1999 UT 99, ¶ 8.

¶18    Under similar circumstances, in *Ostler v. Buhler*, the Utah Supreme Court held that a trial court's order to distribute settlement funds directly to an attorney was void because the attorney failed to properly intervene prior to judgment. 1999 UT 99, ¶ 9, 989 P.2d 1073. In that case, an employee sued a former employer for civil rights violations. *Id.* ¶ 2. After the parties reached a settlement, the employee's attorney filed a notice of a lien for attorney fees and filed a motion asking the court to deposit settlement funds in a court account. *Id.* Two years later, he filed a motion requesting that the court pay him directly, which the court granted. *Id.* ¶ 3. The employee then objected, arguing the "court lacked jurisdiction to enter an order in favor of a non-party." *Id.* ¶ 4.

¶19    On appeal, the attorney argued that the employee's failure to object to his motion for two years constituted waiver. *Id.* ¶ 6. The Utah Supreme Court disagreed, clarifying that this was not a case in which the employee or the former employer, the parties to the action, allowed the attorney to participate. *Id.* ¶¶ 7–9. Rather, the court explained, "the case between the parties had ended before [the attorney] attempted to intervene," and it saw "no reason to require a party to respond to a non-party's post-judgment motions at the risk of having those non-

parties treated as proper interveners." *Id.* ¶ 9. It stated that "[the attorney's] motions were post-judgment motions that in no way affected the merits of the underlying action, its settlement, or its dismissal." *Id.* Accordingly, the court held "that [the employee's] failure to respond to [the attorney's] post-judgment motions did not constitute a waiver of his right to object to the trial court's attorney fees order," and that because "[the attorney] was not a party, . . . the trial court lacked jurisdiction to order distribution of settlement proceeds to him." *Id.*

¶20 Here, Clyde Snow did not engage in any of the underlying action or proceedings on its own behalf and, except for its interest in being paid for its work in representing Woodson, it had no stake in the subject matter. *See id.*; *see also Interstate Land Corp. v. Patterson*, 797 P.2d 1101, 1107–08 (Utah Ct. App. 1990) (requiring the interest of a party seeking to intervene as a matter of right to be "a direct claim upon the subject matter of the action such that the applicant will either gain or lose by direct operation of the judgment to be rendered"). Further, aside from filing a notice of the attorney lien, Clyde Snow filed nothing on its own behalf until after the parties' claims had been settled and they had filed stipulated motions to dismiss the case.

¶21 Similar to *Ostler*, this is not a case where the parties implicitly allowed Clyde Snow to participate in the underlying action; instead, the record shows the parties objected to its participation. *See Fisher v. Fisher*, 2003 UT App 91, ¶ 19, 67 P.3d 1055 (holding that the parties did not waive the intervention requirement because they challenged the non-party's participation in a motion to quash). At the telephonic hearing on Clyde Snow's objection to the parties' motion to dismiss, the defendants voiced their concerns about the court keeping the case open to resolve the attorney lien dispute. They stated, "It would certainly . . . be a lot fairer . . . to dismiss this action, to close out this case . . . otherwise [we] are going to continue to be at least peripherally involved in this matter." The court responded, "If I were to enter an order dismissing all claims against your client with prejudice, however, simply leaving open

the issue of the attorney's lien, wouldn't that get you what you needed?" The defendants replied, "Your Honor. I just think that it would be cleaner the other way." The defendants later explained,

> [We] simply want[] to . . . avoid any publicity on this matter . . . . And we would be concerned that an ongoing dispute between two . . . well known law firms in this valley is likely to attract some attention. And if [the defendants' names are] attached in some manner to this ongoing dispute between these giants of the bar that [we are] going to be dragged in, however peripherally, in a way that [we have] paid to not be.

After the defendants expressed their concerns and objections to Clyde Snow's participation, the court asked if anybody had "a strong objection" to keeping the case open, and no one replied. The court then decided to keep the case open for the sole purpose of resolving Clyde Snow's attorney lien issue.

¶22   In doing so, the court inappropriately allowed Clyde Snow to derail resolution of the case by objecting to the parties' stipulated agreement to dismiss Woodson's claims. The court continuously referenced Clyde Snow and Boyle as parties even though neither had intervened as a party in this case. Although the actual parties did not reply when the court asked if anyone strongly objected to Clyde Snow's participation, any further objections from the defendants would have been futile. Further, the court's decision put the actual parties in an untenable situation: they either had to object to Clyde Snow's presence at the risk of transforming Clyde Snow from non-party status to that of a party or refrain from objecting at the risk of having the court rule in a manner contrary to their interests. *See Oster*, 1999 UT 99, ¶ 9 (explaining that a party's response to a non-party's post-judgment motions puts the party "at the risk of having those non-parties treated as proper parties"). Because Clyde

Snow did not timely move to intervene and the parties did not waive the procedural requirements by allowing Clyde Snow to participate in the litigation, we conclude it was not a party to the underlying action, and the court therefore erred when it held the underlying case open for the sole purpose of resolving the disputes of non-parties.

¶23 Generally, "[a] court cannot go out of its appointed sphere and make orders with respect to persons, who are strangers to its proceedings." *Rolando v. District Court of Salt Lake City*, 271 P. 225, 226 (Utah 1928); *see also Neilson v. Neilson*, 780 P.2d 1264, 1271 (Utah Ct. App. 1989) (explaining that trial courts have no authority to render decisions on issues presented by non-parties and that if they do, those decisions will have no force or effect). Rather, "[u]nder our rules, it is the service of process, the affirmative act of filing suit, or the act of seeking to intervene as a party that subjects one to the jurisdiction of the courts." *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 18, 293 P.3d 241. And "the law is clear that 'acquiescence of the parties is insufficient to confer jurisdiction on the court.'" *Id.* ¶ 24 (quoting *Bradbury v. Valencia*, 2000 UT 50, ¶ 8, 5 P.3d 649). Accordingly, because Clyde Snow, Boyle, and Prince Yeates were not parties to the underlying action, the court lacked jurisdiction to make orders with respect to their interests. *See Neilson*, 780 P.2d at 1271 (explaining that it would be improper for the trial court to grant a request to enforce an attorney lien, if the attorney is not a party to the underlying case). Therefore, the court's orders stemming from Clyde Snow's motions are void, including its decision to keep the case open based on Clyde Snow's objection and its orders based on Prince Yeates's interpleader motion.[4]

---

4. The district court denied Boyle's motion to dismiss, concluding that "Clyde Snow [was] a proper interpleader party." And, on appeal, Clyde Snow asserts that when "the district court approved the establishment of an interpleader

(continued…)

¶24    Finally, because neither Clyde Snow nor Boyle were parties to the underlying action, they are not entitled to an appeal as of right. *See Utah Down Syndrome Found.*, 2012 UT 86, ¶ 9 (explaining that "persons or entities that are not parties to a proceeding are not entitled to an appeal as of right" and, instead, "an extraordinary writ is the vehicle pursuant to which" non-parties can properly challenge a court order (citation and internal quotation marks omitted)). We therefore lack jurisdiction to review Boyle's and Clyde Snow's arguments regarding the merits of the district court's determinations.

---

(…continued)

proceeding within the action . . . [the court] identified Clyde Snow and Boyle as parties to that proceeding." But these characterizations of the funds deposited with the court as an "interpleader" action are inaccurate.

Although we acknowledge that Prince Yeates filed a motion, titled "Prince, Yeates & Geldzahler's Motion to Interplead Funds," this did not establish an interpleader action. Proper interpleader actions are asserted in a complaint or "by way of a cross-claim or counterclaim." *See* Utah R. Civ. P. 22 ("Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . . A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim."). Although an interpleader action is not limited to an original action, rule 22 of the Utah Rules of Civil Procedure requires filing a pleading. Prince Yeates did not file a complaint, nor a cross-claim or counterclaim. Thus, what Prince Yeates filed was not in fact an interpleader action. Further, Clyde Snow offers no legal authority to support the proposition that a non-party may achieve party status by filing a motion to interplead funds.

CONCLUSION

¶25     Because Clyde Snow did not submit a timely application to intervene and the parties did not waive the intervention requirements, it was not a party to the underlying case. As a result, the district court erred by keeping the underlying case open to resolve Clyde Snow's lien. Furthermore, because Clyde Snow, Boyle, and Prince Yeates were not parties to the underlying action, the court lacked jurisdiction to make orders with regard to their post-judgment motions. We therefore reverse and remand for entry of an order consistent with this opinion.[5]

––––––––––

5. As a practical matter, we note that Clyde Snow still has an interest in getting paid. This opinion does not affect the validity of its lien, *see Ostler v. Buhler*, 1999 UT 99, ¶ 11, 989 P.2d 1073, and it may be able to file a separate action to enforce its lien under Utah Code section 38-2-7 if it has complied with the statutory requirements.