2018 UT App 69

## THE UTAH COURT OF APPEALS

THOMAS D. BOYLE,
Appellant,
*v.*
CLYDE SNOW & SESSIONS PC,
Appellee.

Opinion
No. 20140820-CA
Filed April 19, 2018

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 090400630

Thomas D. Boyle, Appellant Pro Se

Jeffery S. Williams, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1      This case is before us on remand from the Utah Supreme
Court. *See generally Boyle v. Clyde Snow & Sessions PC* (*Boyle II*),
2017 UT 57, *rev'g Boyle v. Clyde Snow & Sessions PC* (*Boyle I*), 2016
UT App 114, 378 P.3d 98. Our supreme court reversed this
court's determination in *Boyle I* that the district court did not
have jurisdiction to award attorney fees to Clyde Snow
& Sessions PC (Clyde Snow), concluding that Thomas D. Boyle
had "waived any objection to procedural deficiencies in Clyde
Snow's intervention." *Id.* ¶¶ 3–4. On remand, we are instructed
to address Boyle's remaining contentions. *Id.* ¶ 22.

¶2      Boyle contends the district court erred in awarding
attorney fees to Clyde Snow because: (1) Clyde Snow failed to
perfect its attorney's lien under Utah Code section 38-2-7; (2) the
court failed to "recognize and properly consider Mr. Boyle's

valid assignment of contract rights from Prince Yeates & Geldzaher, PC" (Prince Yeates); and (3) the court denied Boyle his due process rights because he did not have a "full and fair opportunity to be heard." Boyle has failed to develop a "reasoned analysis supported by citations to legal authority and the record" and has therefore failed to meet his burden of persuasion on appeal. Utah R. App. P. 24(a)(8); *see Bank of America v. Adamson*, 2017 UT 2, ¶¶ 12–13, 391 P.3d 196. We therefore affirm the district court's award of attorney fees to Clyde Snow and remand for the sole purpose of dismissing the ancillary fee dispute with prejudice.

## BACKGROUND[1]

¶3    This case began in June 2007 when a plaintiff (Plaintiff) retained Clyde Snow on a contingency fee basis to represent her in her son's wrongful death action. Clyde Snow's contingency fee agreement (the CFA) with Plaintiff secured a forty-percent interest, through an attorney's lien, "of any Recovery achieved either by negotiated compromise or settlement prior to or after the filing of a Complaint." The CFA also provided, "In the event of a Recovery after [Clyde Snow] has been discharged, [Clyde Snow] shall be compensated for the reasonable value of [Clyde Snow's] services."

¶4    Clyde Snow assigned Boyle, who was then an attorney with the firm, to litigate the case. In 2010, after about three years of litigation, Boyle joined Prince Yeates and "[Plaintiff] elected to have [her] claim follow Boyle." *Boyle v. Clyde Snow & Sessions PC* (*Boyle II*), 2017 UT 57, ¶ 5. In July 2010, Clyde Snow sent a letter

---

1. Because we dismiss this case for failure to marshal the record evidence and to develop a reasoned analysis with citations to relevant legal authority or the record, we recite only the record facts pertinent to our analysis with respect to the issues remanded to us by our supreme court.

to Plaintiff and Boyle demanding a minimum payment for its services in the event of a recovery. A few days later, Clyde Snow filed a notice of attorney's lien, asserting its interest in Plaintiff's recovery for the value of the services it had rendered.

¶5     In May 2013, the parties to the wrongful death action settled the claim and moved to dismiss the case with prejudice the following month. In late June, before the court made a decision related to the motion to dismiss, Clyde Snow filed a restated notice of attorney's lien and an objection to the dismissal of the wrongful death action, arguing that the issue of the attorney's lien had not been resolved. The district court dismissed the wrongful death claims with prejudice but ordered the case to "remain open . . . for the sole and limited purpose of deciding [Clyde Snow's] attorney's lien."

¶6     The court ordered Clyde Snow and Prince Yeates to file position statements and mediate the attorney's lien issue. In its position statement, Prince Yeates explained that it need not be involved, because the dispute regarding attorney fees was between Clyde Snow, Boyle, and another attorney involved in the case.[2] Clyde Snow argued that the underlying case originated with Clyde Snow through the CFA and that it was entitled to receive reasonable value for the services it had provided. The parties attempted to mediate but were unsuccessful.

¶7     In January 2014, after notifying the court that mediation was unsuccessful, Prince Yeates filed a motion to interplead funds Clyde Snow could recover if the court determined Clyde Snow had established entitlement to them. Prince Yeates disclaimed any interest it might have had in the interpleaded funds and assigned "any such interest to Mr. Boyle" and the other attorney. The district court granted Prince Yeates's motion and Clyde Snow filed a complaint, asserting its entitlement to

---

2. The other attorney is not a party to this appeal.

the interpleaded settlement funds. Boyle answered the complaint, arguing that Clyde Snow should not receive any of the funds, because it had mismanaged the case, and he asserted several counterclaims. Boyle also moved to dismiss Clyde Snow's complaint, alleging that Clyde Snow failed to properly intervene, and he alternatively filed a motion for summary judgment. The court denied Boyle's motions—concluding the claims in his motion for summary judgment were previously addressed in earlier pleadings and "beyond the scope of this interpleader action"—and conducted an evidentiary hearing on the attorney's lien issue in July 2014.

¶8     At the evidentiary hearing, Clyde Snow called five witnesses, including an expert witness who testified to the method used by Clyde Snow to determine the amount of fees to which it was entitled and to opine on the reasonableness of the amount of its attorney fees demand. Boyle recalled one of Clyde Snow's witnesses for additional testimony and was himself cross-examined by Clyde Snow's attorney during his defense. At the close of the hearing, the court ruled in favor of Clyde Snow and instructed Clyde Snow's attorney to draft a proposed written order, including findings of fact and conclusions of law, which the court adopted.

¶9     In a written order, the district court concluded that, "having heard and weighed [the] testimony of witnesses and other evidence," Clyde Snow was entitled to the "entire amount of the interpleaded funds" to satisfy its attorney's lien. The court concluded that, based on the expert's opinion, the method used to determine the amount Clyde Snow was entitled to was reasonable because it established a fee proportional to the time Clyde Snow and Prince Yeates had dedicated to the case. The court also explained that this method was reasonable given the complexity of the case; the amount in controversy; the scope of services rendered by each firm and the results obtained; the novelty and difficulty of the issues; whether the case was necessary to vindicate Plaintiff's underlying action; the efficiency of the representation; the number of hours billed by each firm;

the nature of the contingency fee agreements; and the expertise of the attorneys involved. Finally, the court concluded that Boyle "presented no facts that would indicate that the amount of Clyde Snow's claimed lien is unfair or unreasonable" and that his "argument that he is entitled to be paid more than what he has already been paid by [each firm] is without merit." Boyle appeals.

## ANALYSIS

¶10 Boyle contends the district court erred in awarding attorney fees to Clyde Snow for three reasons. First, he contends that Clyde Snow failed to perfect its attorney's lien under Utah Code section 38-2-7. Second, the court failed to "recognize and properly consider Mr. Boyle's valid assignment of contract rights from Prince Yeates." Third, the court denied Boyle his due process rights because he did not have a "full and fair opportunity to be heard." We decline to address the merits of these contentions because they are inadequately briefed.

¶11 An appellant's brief "must explain, with reasoned analysis supported by citations to legal authority and the record, why the [appellant] should prevail on appeal." *See* Utah R. App. P. 24(a)(8). "[A]n appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." *Bank of America v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (quotation simplified). An appellant "must cite the legal authority on which its argument is based and then provide reasoned analysis of how that authority should apply in the particular case, including citations to the record where appropriate." *Id.* ¶ 13.

¶12 Boyle's principal brief included a "statement of the case," describing the facts of the case without providing any record cites for those facts. Utah R. App. P. 24(a)(6)(A) (providing that the "statement of the case must include, with citations to the record[,] the facts of the case, to the extent necessary to

understand the issues presented for review"). Though, standing alone, this is not necessarily a reason for determining a brief is inadequate, we are unable to consider any of the purported facts in this section of his brief. Boyle's burden of persuasion can be met only if the facts used in the argument section of the brief are sufficient to provide context for the events that occurred in the district court, are correctly shown to be in the record, and are analyzed in relation to pertinent legal authority. *See Adamson*, 2017 UT 2, ¶¶ 12–13. That is not the case here.

¶13     For example, with respect to his contention that Clyde Snow failed to perfect its attorney's lien, Boyle argues that the restated notice of attorney's lien filed in June 2013—one month after the underlying wrongful death action was settled—was not perfected because "[n]o demand to [Plaintiff] for payment had been made as required by" Utah Code section 38-2-7. We are at a loss as to how Boyle reached this conclusion, given that Clyde Snow sent a letter to Plaintiff in July 2010, demanding payment of the costs and fees it incurred during its nearly three years of litigating the wrongful death action.[3] Because Clyde Snow sent the letter more than thirty days before it filed the restated notice of attorney's lien in June 2013, it complied with Utah Code section 38-2-7. *See* Utah Code Ann. § 38-2-7(5)(c) (LexisNexis

---

3. Boyle's brief also quotes the language from Clyde Snow's restated notice of lien filed in June 2013 that states, "Clyde Snow initially made demand for recognition of its right to payment of its fees on July 2, 2010, well more than 30 days ago. It subsequently provided detailed time and expense itemization to [Prince Yeates] on June 24, 2011, and again on September 8, 2011, supporting the lien amount." This information was contained within the record, though neither party has confirmed nor disputed it. In any event, Boyle fails to explain how this information was insufficient but instead relies on his unsubstantiated claim that Clyde Snow did not demand payment.

2010).[4] Boyle has failed to support his contention, and given the contrary evidence in the record, he has not carried his burden of persuasion.

¶14   Without fully articulating his reasoning, Boyle also asserts that Clyde Snow failed to perfect its lien because all three of Clyde Snow's notices of attorney's lien violated other subsections of Utah Code section 38-2-7. But he cites the same subsections of the statute for each alleged violation without providing a year for the statute that applies to each of his assertions. This failure has placed the burden on this court to determine whether he is referring to the version applicable in (1) 2010 when Clyde Snow first filed its notice of attorney's lien; (2) 2013 when Clyde Snow filed its restated notice of attorney's lien; or (3) 2014 when Clyde Snow filed its second restated notice of attorney's lien. This is a significant oversight because the statutory provisions have been continually revised. Based on his citations, it is unclear whether he applied the relevant versions to each challenge, and, as our supreme court has made clear, an appellant may not "dump the burden of argument and research" on an appellate court. *See Adamson*, 2017 UT 2, ¶ 11. Without providing proper citations to legal authority or to the record, Boyle has failed to meet his burden of persuasion with respect to his contentions that Clyde Snow failed to perfect its attorney's lien under Utah Code section 38-2-7.

¶15   With respect to his two other contentions, Boyle has failed to develop any reasoned analysis, supported by case law, in explaining why he is entitled to relief on appeal.

---

4. Boyle raises Clyde Snow's alleged failure to send a demand for payment prior to filing the restated notice of attorney's lien in 2013 in violation of Utah Code section 38-2-7. Because Clyde Snow sent a demand letter in July 2010, we refer to the 2010 Code.

¶16 For example, Boyle asserts the district court failed to recognize the assignment of contract rights in his favor, but he merely provides a definition of assignment of contract rights—as articulated in *Sunridge Development Corp. v. RB & G Engineering, Inc.*, 2010 UT 6, ¶ 13, 230 P.3d 1000. He then states that because Prince Yeates "had previously assigned 80 percent of its rights in [Plaintiff's] contract years before to Boyle[, Prince Yeates] could not give up more rights in the interpleader than [it] possessed."

¶17 But our review of the record shows that Boyle's employment agreement with Prince Yeates provided that, after Prince Yeates recovered out-of-pocket costs and twenty percent of the recovery under its contingency fee with Plaintiff,

> Thomas D. Boyle and [the other attorney] (by agreement between them) share, proportionate to their hourly contributions to the case, the remaining 80 percent of the attorney's fee from which is paid (a) the hourly time of other [Prince Yeates] timekeepers at their standard hourly rates, (b) time worked by [another individual] (by separate agreement between [that individual], Mr. Boyle and [the other attorney]) and (c) *Clyde Snow & Session's interest in any recovery received*.

(Emphasis added.) In other words, the assignment provision required that, in the event Plaintiff recovered damages, Boyle was required to reimburse Clyde Snow for the costs and fees it had incurred during its representation of Plaintiff. The record also shows that Prince Yeates disclaimed any interest it may have had to the interpleaded funds and assigned "any such interest to Mr. Boyle" and a second attorney.

¶18 Boyle has failed to explain why Prince Yeates's assignment of rights to Boyle, which required him to pay Clyde Snow and others who helped litigate the underlying wrongful death case, did not comport with the court's conclusion that,

because there were "no excess [interpleaded] funds[,] . . . the assignment issue raised by Mr. Boyle is immaterial." He has therefore failed to meet his burden of persuasion with respect to this issue.

¶19 Finally, Boyle claims his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated because the district court denied him a "full and fair opportunity to be to heard" as "the assignee of [Plaintiff]." Boyle states that he was Plaintiff's "assignee under the [CFA]" with Clyde Snow, but he does not explain how the CFA assigned Plaintiff's rights to him. Instead, he provides thirteen numbered paragraphs that articulate motions filed with the district court and the court's rulings on those motions and in its final order. Boyle cites his memorandum in support of summary judgment, which states, "Boyle is the assignee of [Plaintiff's] rights, title, and interest in and to [the CFA] between [Plaintiff] . . . and [Clyde Snow] . . . . Date[d] December 6, 2013." This is perplexing because Boyle has previously agreed that the CFA was entered into in 2007, not 2013; and this memorandum states that the information could be found in an exhibit entitled "[Plaintiff's] Assignment to Boyle, dated December 13, 2013" rather than the CFA entered into by Plaintiff and Clyde Snow. Boyle has not referred us to the exhibit purportedly assigning him Plaintiff's rights in the underlying case.

¶20 Boyle further argues that the district court violated his due process rights because the court "failed to apply the factors set forth by the Utah Supreme Court, failed to apply Utah law, [and] due process law." Boyle references the court's order in which the court articulated and analyzed "all of the factors set forth by the Utah Supreme Court" with respect to awarding interpleaded funds and concluding that those factors "weigh[ed] in favor of Clyde Snow[] and supported Clyde Snow's lien." Without "providing reasoned analysis" supported by legal authority, Boyle cannot meet his burden of persuasion on appeal. *See Adamson*, 2017 UT 2, ¶ 13. We therefore decline to

address this claim based on Boyle's failure to adequately brief his argument and to persuade us of its validity.

CONCLUSION

¶21    Boyle has failed to develop a reasoned analysis supported by citations to legal authority or relevant parts of the record to support his contentions of error. We therefore decline to address his arguments on the merits, affirm the district court's award of attorney fees to Clyde Snow, and remand to the district court to dismiss with prejudice Boyle's claim for additional attorney fees and to disburse any remaining interpleaded funds as is appropriate in view of our decision.

_____